J-A12008-15

2015 PA Super 168

| SHIRLEY WASHBURN, ADMINISTRATRIX OF THE ESTATE OF DONALD WASHBURN, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NORTHERN HEALTH FACILITIES, INC.; EXTENDICARE HEALTH FACILITIES, INC.; EXTENDICARE HEALTH SERVICES, INC.; EXTENDICARE HEALTH NETWORK, INC.; EXTENDICARE HOLDINGS, INC.; EXTENDICARE, INC.; EXTENDICARE REIT; EXTENDICARE, L.P., | |
| Appellants | No. 1118 MDA 2014 |

Appeal from the Order Entered June 9, 2014
In the Court of Common Pleas of Schuylkill County
Civil Division at No(s): S-399-13

BEFORE:  BOWES, DONOHUE AND ALLEN, JJ.

OPINION BY BOWES, J.:                    **FILED AUGUST 07, 2015**

Northern Health Facilities, Inc., d/b/a Tremont Health & Rehabilitation, an Extendicare entity (collectively "Tremont"), appeals from the June 9, 2014 order overruling preliminary objections in the nature of a petition to compel arbitration.  After careful review, we affirm.

On March 4, 2011, Donald Washburn ("Mr. Washburn" or "Decedent") was transferred via ambulance from the East Orange Veterans' Administration Medical Center to Tremont.  Shirley Washburn, his wife, drove behind the ambulance.  Upon arrival at Tremont, nursing home

personnel pulled Mrs. Washburn aside to sign the paperwork to enable her husband's admission to the facility. The staff member assisting her was not the usual intake person. When Mrs. Washburn advised her that she did not have power of attorney for her husband, the staff person insisted that all the paperwork had to be signed prior to his admission.

Among the documents executed by Mrs. Washburn was a stand-alone "Alternative Dispute Resolution Agreement" ("ADR agreement") between Extendicare, on behalf of its affiliates and subsidiaries including Tremont, and the Resident Donald Washburn. Mr. Washburn did not sign the ADR agreement. Mrs. Washburn signed next to the "Xs" placed by Tremont staff on the lines for "Legal Representative for Healthcare Decisions" and "Legal Representative for Financial Decisions." ADR Agreement, 3/4/11, at 5.[1] Mr.

---

[1] Mrs. Washburn signed numerous documents in various representative capacities. She signed a "Responsible Party Agreement" on the line designated for the legal representative of the resident. That Responsible Party Agreement provided: "It is Center policy that this form must be presented to and signed by someone other than the Resident." Responsible Party Agreement, 3/4/11, at 1. She also signed the Admission Agreement, an agreement between the Center and Mr. Washburn, as the legal representative for both healthcare and financial decisions. On the form giving permission to Tremont to hold and safeguard funds, Mrs. Washburn signed as the "patient representative." She signed the form authorizing the expenditure of personal funds as the "resident representative." The Resident Trust Fund Authorization form bears her signature as "Legal Representative for Financial Decisions," although the adjacent line for the legal representative's title, such as POA or guardian, is blank. On several occasions, Mrs. Washburn requested copies of the documents she signed, but Tremont did not provide them.

Washburn remained a resident at Tremont until April 28, 2011. He never regained mental competency before his death on March 1, 2012.

On March 1, 2013, Shirley Washburn filed the within survival action in her capacity as Administratrix of the Estate of Donald Washburn, and alleged that Tremont's facility was negligently understaffed and mismanaged and unable to meet the Decedent's needs. She averred that Tremont's care violated the Neglect of a Care/Dependent Person Statute, 18 Pa.C.S. § 2713, and the Older Adults Protective Services Act, 35 P.S. § 10225.101 *et seq*. She also maintained that, due to Tremont's failure to provide sufficient food, water, medication and overall care, Decedent became dehydrated, contracted pneumonia, urinary and respiratory infections, and sepsis, all of which contributed to his death.

Tremont filed preliminary objections to both the original and amended complaints seeking to compel arbitration of the claim pursuant to the ADR agreement signed by Mrs. Washburn in her representative capacity on behalf of her husband. The trial court ordered discovery on the enforceability of the arbitration agreement, and, following argument and the submission of briefs, the trial court overruled the preliminary objections. Tremont filed the within appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Tremont presents five issues for our review, which we have re-reordered for ease of disposition:

1. Whether the Court committed reversible error in concluding that Mrs. Washburn did not have authority to sign the ADR Agreement on her husband's behalf.

2. Whether the Court committed reversible error when it concluded that Plaintiff was not equitably estopped from attempting to disavow the ADR Agreement she signed on her husband's behalf after she agreed to a full range of other contractual undertakings, and pursuant to her agreements as evidenced by her signature on his behalf, her husband received the full panoply of nursing home goods and services to be paid for, again as a result of Mrs. Washburn's agreement and signature, by Medicare and then Medicaid.

3. Whether the Court committed reversible error in concluding that Mr. Washburn was not a third party beneficiary of the ADR agreement signed for his benefit by his wife.

4. Whether the Court committed reversible error in concluding that the Federal Arbitration Act did not mandate enforcement of the ADR Agreement Mrs. Washburn signed on her husband's behalf.

5. If arbitration is ordered as a result of this appeal, should the order concerning the remaining preliminary objections be vacated so that those issues can, consistent with the enforced ADR Agreement, be presented for decision to the arbitrator.

Appellants' brief at 2-3.

Our scope and standard of review of a claim that the trial court erred in overruling a preliminary objection in the nature of a motion to compel arbitration is whether there has been an abuse of discretion and whether the trial court's findings are supported by substantial evidence. *Taylor v. Extendicare Health Facilities, Inc.*, 113 A.3d 317, 320 (Pa.Super. 2015). We employ a two-part test to determine whether the trial court should have compelled arbitration: 1) whether a valid agreement to arbitrate exists, and

2) whether the dispute is within the scope of the agreement. *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 654 (Pa.Super. 2013); *see also Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa.Super. 2012) (quoting *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1270 (Pa.Super. 2004)).

At issue herein is whether a valid agreement to arbitrate existed. It is undisputed that the Mr. Washburn had dementia and lacked the capacity to execute the arbitration agreement. Mrs. Washburn signed as the designated legal representative for healthcare and financial decisions, but she did not have her husband's power of attorney and she had not been appointed his guardian and she communicated that to Tremont's employee. Thus, the question is whether Mrs. Washburn had the authority, apparent or otherwise, as her husband's agent, to legally bind him and his estate to arbitrate claims arising from his stay at Tremont.

Tremont, the party asserting agency, has the burden of establishing an agency relationship. *Basile v. H & R Block. Inc.*, 761 A.2d 1115, 1120 (Pa. 2000). "The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Bradney v. Sakelson*, 473 A.2d 189, 191 (Pa.Super. 1984) (quoting Restatement (Second) of Agency, § 1, Comment b (1958)). "An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or

(4) authority by estoppel." ***Walton v. Johnson***, 66 A.3d 782, 786 (Pa.Super. 2013).

> Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. Implied authority exists in situations where the agent's actions are "proper, usual and necessary" to carry out express agency. Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal.

***Walton***, ***supra*** at 786 (citations omitted).

Tremont concedes that Mrs. Washburn had no written express authority from her husband to act on his behalf generally or with regard to his admission at Tremont specifically. It contends, however, that the trial court erred in requiring evidence of specific authorization and maintains that agency may be implied by attending circumstances. Tremont directs our attention to the Restatement (Second) of Agency § 22, which provides that "husband or wife may be authorized to act for the other party to the marital relationship." Comment b to the section suggests that one spouse's custom or habit in acting for the other may imply the necessary apparent authority. The identical provision in the Restatement (First) of Agency was cited with approval in ***Sidle v. Kaufman***, 29 A.2d 77 (Pa. 1942).

Tremont contends that evidence that Mr. Washburn "habitually permitted Mrs. Washburn to attend to some of his business matters" both

before and after he became disabled created an implied or apparent agency. Appellants' brief at 16. Mrs. Washburn electronically signed their joint tax returns on his behalf. She also completed his application for Medicaid benefits and a "Do not Resuscitate" form. Tremont maintains that this course of conduct distinguishes this case from *Lapio v. Robbins*, 729 A.2d 1229 (Pa.Super. 1999), where the issue was whether wife was liable for default on a loan which her husband secured by signing her name. In that case, there was no express authority conferred. This Court found no spousal agency because there was no evidence that wife had ever permitted husband to endorse her name on a check or transact her business affairs or that she was involved in the business that benefitted from the loan.

The trial court relied on this Court's decision in *Walton*, *supra*, in refusing to compel arbitration. In that case, a hospital sought to enforce against a patient, daughter, an arbitration agreement signed by her mother on daughter's behalf while daughter was comatose. As herein, the arbitration agreement was one in a series of documents presented to mother; mother believed she was signing documents authorizing the hospital to treat her daughter. Mother did not have a power of attorney and daughter had not expressly authorized mother to act on her behalf. The enforceability of the agreement depended on whether mother was acting as daughter's agent when she signed the document.

We concluded that daughter, who was comatose, could neither authorize her own treatment nor grant such authority to mother. We held, based on *Sidle*, *supra* at 81, that an agency relationship could not be inferred from "mere relationship or family ties unattended by conditions, acts or conduct clearly implying an agency." The hospital had failed to satisfy its burden of demonstrating an agency relationship. We relied on deposition testimony from mother and daughter that daughter was unaware of the arbitration clause, did not agree to arbitrate disputes, and did not authorize her mother to so agree. Since the documents were not presented to daughter for ratification when she regained consciousness, and there was no evidence that she was aware of mother's consent to arbitrate and negligently failed to repudiate her mother's consent, we found no agency by estoppel. We held that the arbitration agreement was unenforceable as to daughter.

Tremont attempts to distinguish *Walton* on two bases: (1) it involved a mother and adult daughter rather than a husband and wife, and the Restatement (Second) of Agency § 22 was inapplicable, and (2) there was no evidence that mother habitually acted as her daughter's agent. We are not persuaded that the marital relationship herein warrants a contrary result. The Restatement (Second) of Agency § 22 does not create a marital agency, but merely recognizes that due to the relationship, "circumstances which in the case of strangers would not indicate the creation of authority or

apparent authority may indicate it in the case of husband or wife." We find that may be equally true of a parent/child relationship.

The second basis for distinguishing **Walton** is without factual support. The trial court herein found no evidence that Mr. Washburn authorized his wife to act on his behalf. The trial court found that "Mrs. Washburn's testimony was that she believed her husband would have given her authority to sign tax returns but he became sick and she took it upon herself to grant herself that authority." Trial Court Opinion, 6/9/14, at 10. The court relied upon **Turnway Corp. v. Soffer**, 336 A.2d 871, 876 (Pa. 1975), for the well-established proposition that an agent cannot "simply by his own words," clothe himself with apparent authority; such authority must come from the principal.

Furthermore, for purposes of apparent authority, the trial court reasoned that Tremont did not know at the time it presented Mrs. Washburn with the admission packet that she had executed tax returns on her husband's behalf. It concluded that, "[n]o facts were presented to indicate that Mr. Washburn by words or conduct led Tremont Nursing Center to believe Mr. Washburn had granted his wife the authority to sign the admission paperwork." **Id**.

The record supports the trial court's view of the evidence and we find **Walton** sufficiently analogous as to be controlling herein. It is well settled that neither a husband nor wife has the power to act as agent for the other

merely due to the marriage relationship. **Bradney**, **supra**. However, the law recognizes that, due to the nature of the relationship, there may be circumstances where one spouse has apparent authority to act for the other. In **Tonuci v. Beegal**, 145 A.2d 885, 888 (Pa.Super. 1958) (citing Restatement, Agency 2d § 22(b)), husband had a power of attorney from his wife to sign checks. In addition, husband had acted as her agent throughout the transaction at issue as well as many other transactions. Husband reported that his wife gave him blanket authority to make whatever financial arrangements he felt were in her best interest. On those facts, we found that husband contracted as an agent for his wife.

The flaw in Tremont's position is that while there is evidence that Mrs. Washburn previously acted on her husband's behalf, the record is devoid of evidence that Mr. Washburn ever authorized his wife to do so. Although Mrs. Washburn filed a joint tax return, her husband did not authorize her to fill in his birthdate or social security number for the electronic signature. Mrs. Washburn believed that he would have authorized her to execute the tax form had he not been sick. Deposition, Shirley Washburn, 11/13/13, at 26.[2] She signed the form declining CPR and extraordinary measures

---

[2] Mrs. Washburn's deposition is not contained in the certified record. It is the responsibility of the appellant to ensure that the certified record is complete prior to transmittal to this Court. **Parr v. Ford Motor Co**., 109 A.3d 682, 695 (Pa.Super. 2014) (*en banc*) (holding under the Pa.R.A.P.
*(Footnote Continued Next Page)*

- 10 -

because her husband specifically articulated that he did not want such measures performed. She did not sign documents because he authorized her to do so. *Id*. at 71.

Moreover, the fact that Mrs. Washburn affixed her husband's signature to joint tax returns and healthcare forms does not establish that her husband authorized her to act as his agent in the circumstances herein. Mrs. Washburn signed the ADR agreement on the lines indicated by an "X" because a Tremont employee represented that her signature was required for admission. She signed the application for Medicaid benefits "because Tremont personnel told her she had to sign it." *Id*. at 42. Conspicuously absent is the authority from the principal to act as his agent. *See Turnway Corp.*, *supra*.

In addition, apparent authority exists where a principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted agent authority he or she purports to exercise. *Turner Hydraulics, Inc. v. Susquehanna Constr. Corp.*, 606 A.2d 532,

---
*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

1921, any document which is not part of the officially certified record is deemed non-existent. *See also Commonwealth v. Walker*, 878 A.2d 887, 888 (Pa.Super. 2005); *Fiore v. Oakwood Plaza Shopping Ctr.*, 585 A.2d 1012, 1019 (Pa.Super. 1991). However, since the transcript is contained in the reproduced record, and there is no objection to its accuracy, we may rely upon it. *Wmi Group, Inc. v. Fox*, 109 A.3d 740, 744 n.5 (Pa.Super. 2015) (citing *Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012)).

535 (Pa.Super. 1992). There were no prior dealings between Mr. Washburn and Tremont. When the arbitration agreement was signed, Tremont was unaware that Mrs. Washburn had been signing her husband's name to some documents. Thus, it had no basis to infer that she was authorized to act on his behalf. To the contrary, Mrs. Washburn specifically informed Tremont that she did not have a power of attorney or guardianship for her husband. On the record before us, we find no basis to disturb the ruling of the trial court.

Tremont's equitable estoppel argument fares no better. Tremont maintains that, since Mr. Washburn accepted the benefit flowing from his wife's agreements on his behalf, namely the services set forth in the admission agreement, he is estopped to disavow the arbitration agreement "because his estate finds that one obligation distasteful." Appellants' brief at 20 (citing **E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.**, 269 F.3d 187, 200 (3d Cir. 2001) and **Friedman v. Yula**, 679 F.Supp.2d 617, 627-28 (E.D. Pa. 2010)). The trial court distinguished **DuPont** and **Friedman** because they involved a single contract containing a mandatory arbitration clause while the arbitration agreement herein is a stand-alone agreement. Tremont contends that is a "distinction without a difference." Appellants' brief at 20. It directs our attention to **THI of New Mexico at Hobbs Ctr., LLC v. Patton**, 2012 WL 112216 (D.N.M. 2012), where the federal district court in New Mexico

rejected a nursing home resident's representative's attempt to disavow an arbitration agreement while retaining the benefits of the separate admission agreement.

We agree with the trial court that the distinction is a critical one. In **DuPont**, the Court of Appeals for the Third Circuit acknowledged that other courts had applied equitable estoppel to bind non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement. (citing **Thomson-CSF, S.A. v. American Arbitration Assoc.**, 64 F.3d 773, 778 (2d Cir. 1995)). The **DuPont** court refused, however, to apply the doctrine in that case as there was no evidence that DuPont embraced the agreement or received any direct benefit under it.

Similarly, in this case, there is no evidence that the Decedent availed himself of the ADR agreement or received any benefit under that agreement. The ADR agreement was separate from the admission agreement and admission was not conditioned upon agreeing to arbitrate. Thus, the agreement to arbitrate was not part of the contractual *quid pro quo* for admission to the facility and its attendant benefits. Such was not the case in **THI of New Mexico**. Although that arbitration agreement was separate, admission to the facility was contingent upon agreeing to arbitrate. The arbitration agreement provided: "Resident/Representative understands that

signing this Agreement to arbitrate is a precondition for medical treatment or admission to the Health Care Center." *Id*. at *2.

Nor do we find any merit in Tremont's claim that Mr. Washburn's estate is required to arbitrate his survival action because he was an intended third-party beneficiary of the arbitration agreement signed by his wife. Mrs. Washburn did not sign the ADR agreement in her personal capacity, but in a representative capacity. Mr. Washburn could not be an intended third-party beneficiary of a contract to which he was ostensibly a party. In short, there is no evidence in the writing that the parties intended to confer third-party beneficiary status upon Mr. Washburn. *Burks v. Fed. Ins. Co.*, 883 A.2d 1086 (Pa.Super. 2005).

Thus, there was no enforceable arbitration agreement under any of the theories advanced by Tremont. Despite national and state policies favoring arbitration, a party cannot be compelled to arbitrate in the absence of a valid agreement to do so under either Pennsylvania law or the Federal Arbitration Act. *See Prima Paint Corp. v. Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (construing the Federal Arbitration Act as designed "to make arbitration agreements as enforceable as other contracts, but not more so"); *Taylor*, *supra* at 324 (absent an agreement to arbitrate, arbitration cannot be compelled). Moreover, since we are affirming the trial court's order overruling the petition to arbitrate, Tremont's request that the court's rulings

on the other preliminary objections be vacated and addressed by the arbitrator is moot.

Order affirmed. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/7/2015