**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IRENE TRAVER, ADMINISTRATRIX OF THE ESTATE OF CLAYTON L. TRAVER, DECEASED | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| RELIANT SENIOR CARE HOLDINGS, INC.; RELIANT LAKESIDE HOLDINGS, LLC, D/B/A/, LAKESIDE HEALTH AND REHABILITATION CENTER; RELIANT SENIOR CARE MANAGEMENT, LLC; RELIANT SENIOR CARE PENNSYLVANIA, LLC; RSC MASTER TENANT I, LLC; RSC CONSOLIDATED HOLDINGS, LLC; HCR MANORCARE, LLC; MANORCARE OF KINGSTON PA, LLC D/B/A MANORCARE HEALTH SERVICES - KINGSTON; MANORCARE HEALTH SERVICES, INC., A/K/A MANORCARE HEALTH SERVICES, LLC; HCR MANORCARE HEARTLAND, LLC; MANOR CARE, INC.; HCR MANORCARE, INC.; HCR IV HEALTHCARE, LLC.; HCR III HEALTHCARE, LLC; HCR II HEALTHCARE, LLC; HCR HEALTHCARE, LLC; HCRMC OPERATIONS, LLC; HCR MANORCARE OPERATIONS II, LLC. HCR MANOR CARE SERVICES, LLC; HEARTLAND EMPLOYMENT SERVICES, LLC; GOLDEN GATE NATIONAL SENIOR CARE, LLC; GGNSC WILKES-BARRE II LP D/B/A GOLDEN LIVING CENTER - SUMMIT; GGNSC HOLDINGS LLC; GGNSC EQUITY HOLDINGS, LLC; GGNSC ADMINISTRATIVE SERVICES LLC; GGNSC CLINICAL SERVICES, LLC; GOLDEN GATE ANCILLARY, LLC; WYNETTE WOLFORD, NHA; RIVER | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | |

| | |
|---|---|
| RUN, LLC D/B/A RIVER RUN REHABILITATION AND NURSING CENTER; MOSHE SCEINER; NATHAN STERN | : : : : : : |
| APPEAL OF: GOLDEN GATE NATIONAL SENIOR CARE, LLC; GGNSC WILKES-BARRE II LP, D/B/A GOLDEN LIVING CENTER - SUMMIT; GGNSC HOLDINGS, LLC; GGNSC EQUITY HOLDINGS, LLC; GGNSC ADMINISTRATIVE SERVICES, LLC; GGNSC CLINICAL SERVICES LLC; GOLDEN GATE ANCILLARY, LLC; AND WYNETTE WOLFORD, NHA | : : : : : : : : : : No. 452 MDA 2019 : |

Appeal from the Order Entered February 7, 2019
in the Court of Common Pleas of Luzerne County
Civil Division at No(s):  2016-3983

BEFORE:  STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:        **FILED: FEBRUARY 6, 2020**

Golden Gate National Senior Care, LLC; GGNSC Wilkes-Barre II LP D/B/A Golden Living Center – Summit ("the Golden Living Facility"); GGNSC Holdings, LLC; GGNSC Equity Holdings, LLC; GGNSC Administrative Services, LLC; GGNSC Clinical Services LLC; Golden Gate Ancillary, LLC; and Wynette Wolford, NHA (collectively, "the Golden Living Defendants"), appeal from the Order denying their Preliminary Objection, in the nature of a Motion to Compel Arbitration, to the Complaint filed by Irene Traver ("Traver"), as Administratrix

of the Estate of Clayton L. Traver, deceased ("the Estate").[1]  We affirm.

Between 2013 and 2015, Clayton L. Traver ("Decedent"), Traver's husband, resided in several different nursing home facilities on multiple occasions, including a residency at the Golden Living Facility from December 1, 2014, to December 19, 2014.  Relevantly, when Decedent was admitted to the Golden Living Facility, Traver signed an Admission Agreement and an Arbitration Agreement on Decedent's behalf.   Decedent died on March 20, 2015.

As Adminstratrix of the Estate, Traver initiated the instant action on April 14, 2016, by filing a Praecipe for Writ of Summons.  Traver filed Praecipes to Reissue the Writ of Summons on May 12, 2016, and June 6, 2016.[2]

---

[1] The Golden Living Defendants' Preliminary Objections contained various other Motions, which the trial court granted in part, denied in part, and overruled in part.  However, the Motion to Enforce the Arbitration Agreement is the sole issue relevant to this appeal.  Although interlocutory, an appeal may be taken as of right from an order denying a petition to compel arbitration.  **Bair v. Manor Care of Elizabethtown, PA, LLC**, 108 A.3d 94, 96 (Pa. Super. 2015); **see also** 42 Pa.C.S.A. § 7320(a)(1); Pa.R.A.P. 311(a)(8).

[2] Traver later filed a Motion to Consolidate the instant action with a separate action (which is not included in the certified record) that she had filed against the owners and operators of the Lakeside Health and Rehabilitation Center. The trial court granted Traver's Motion to Consolidate on September 14, 2016.

Traver filed a Complaint[3] on September 21, 2016, asserting claims of ordinary and corporate negligence, custodial neglect, survival and wrongful death. Regarding the Golden Living Defendants, Traver alleged that, in an effort to maximize profits, the Golding Living Defendants intentionally reduced staffing levels and increased the number of sick, elderly, and frail patients requiring complex medical care. Traver claimed that this practice resulted in a recklessly high resident-to-staff ratio, and a failure of staff to properly manage and treat illnesses and injuries among the residents. Traver alleged that, as a result of inadequate care, Decedent suffered from two unwitnessed falls, skin tears, a fungal infection, pressure sores, sepsis, and a left inguinal abscess.

On October 11, 2016, the Golden Living Defendants filed Preliminary Objections, including a Motion to Compel Arbitration. Specifically, the Golden Living Defendants asserted that, upon Decedent's admission to the Golden Living Facility, Traver executed an Arbitration Agreement on Decedent's behalf. The Arbitration Agreement provides, in relevant part, as follows:

---

[3] The Complaint named 31 total defendants. HCR ManorCare, LLC; ManorCare of Kingston PA, D/B/A ManorCare Health Services – Kingston; ManorCare Health Services, Inc., A/K/A ManorCare Health Services, LLC; HCR ManorCare, Inc.; HCR IV Healthcare, LLC; HCR II Healthcare, LLC; HCR Healthcare, LLC; HCRMC Operations, LLC; HCR ManorCare Operations II, LLC; Heartland Employment Services, LLC; and HCR ManorCare Services, LLC, filed a separate, related appeal, which is docketed at No. 432 MDA 2019. The remaining listed defendants are not parties to the instant appeal.

**ALTERNATIVE DISPUTE RESOLUTION [("ADR")] AGREEMENT**

THIS AGREEMENT IS <u>NOT</u> A CONDITION OF ADMISSION TO
OR CONTINUED RESIDENCE IN THE FACILITY

\* \* \*

**II. Voluntary Agreement to Participate in ADR**

The Parties agree that any disputes covered by this Agreement ("Covered Disputes") that may arise between them shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration. The parties to this Agreement acknowledge and agree that upon execution by Resident, this Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction in interstate commerce governed by the Federal Arbitration Act. The relief available to the Parties under this Agreement shall not exceed that which otherwise would be available to them in a court action based on the same facts and legal theories under the applicable federal, state or local law.

**THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY, THE OPPORTUNITY TO PRESENT THEIR CLAIMS AS A CLASS ACTION AND/OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN.**

\* \* \*

**III. Covered Disputes**

… Covered disputes include but are not limited to all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any

applicable federal, state, or local medical, health care, consumer, or safety standards. …

Preliminary Objections, 10/11/16, Exhibit B (Arbitration Agreement) (bold in original).

Traver filed a Response, and a Memorandum in support thereof, on October 31, 2016. Traver alleged, *inter alia*, that the Arbitration Agreement was unenforceable because Traver lacked legal authority to execute a binding agreement on Decedent's behalf.

Following discovery and briefing concerning the circumstances surrounding the execution of the Arbitration Agreement, the trial court entered an Order on February 7, 2019, denying the Golden Living Defendants' Motion to Compel Arbitration. The Golden Living Defendants filed a timely Notice of Appeal.[4, 5]

The Golden Living Defendants now raise the following issue for our review:

In finding that the parties did not agree to arbitrate, did the trial court err in failing to consider evidence of express, implied, and apparent authority of [] Traver to execute the [A]rbitration [A]greement for [Decedent], when the unrefuted record evidence demonstrated that [Decedent] expressed his consent for [] Traver to act on his behalf?

---

[4] The end of the 30-day appeal period was March 9, 2019, a Saturday. **See** 1 Pa.C.S.A. § 1908.

[5] The trial court did not order the Golden Living Defendants to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Brief for Appellants at 6.

The Golden Living Defendants urge us to consider this appeal in the context of federal and state policies favoring arbitration. *Id.* at 14-15. The Golden Living Defendants claim that, despite the lack of a valid power of attorney, Traver had legal authority to execute the Arbitration Agreement on behalf of Decedent. *Id.* at 15. The Golden Living Defendants point to testimony by the Golden Living Facility's admissions director, Paulette Delevan ("Delevan"), that her routine practice would have required Decedent to give his permission for Traver to sign the admissions paperwork. *Id.* at 17-18. According to the Golden Living Defendants, such conduct establishes that Traver had express, implied, and apparent authority, as well as authority by estoppel, to act as Decedent's agent. *Id.* at 18.[6, 7]

We are mindful of the following standard of review:

> In reviewing a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration, we are limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. Since

---

[6] The Golden Living Defendants fail to provide separate argument regarding each of these issues.

[7] The Golden Living Defendants also provide argument concerning contract formation principles (*i.e.*, Traver's failure to read the Arbitration Agreement, and unconscionability). *See* Brief for Appellants at 19-22. However, this argument is not included in the Statement of Questions Involved, or fairly suggested thereby. *See* Pa.R.A.P. 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

contract interpretation is a question of law, our review of the trial court's decision is *de novo* and our scope is plenary.

**Bair**, 108 A.3d at 96 (internal citations and quotation marks omitted).

Even if a party did not sign an arbitration agreement, he may be compelled to arbitrate under such agreement, based on common law principles of agency and contract. **Wisler v. Manor Care of Lancaster, LLC**, 124 A.3d 317, 323 (Pa. Super. 2015). Here, the Golden Living Defendants, as the parties asserting agency, bear the burden of establishing an agency relationship between Decedent and Traver. **See id.**

"Agency is a relationship whereby the principal manifests assent that another person (the agent) will act on the principal's behalf subject to the principal's control, and the agent agrees to do so." **Id.**

> The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking[,] and the understanding of the parties that the principal is to be in control of the undertaking. An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel.

**Washburn v. N. Health Facilities, Inc.**, 121 A.3d 1008, 1012 (Pa. Super. 2015) (citations and quotation marks omitted).

Decedent was admitted to the Golden Living Facility in December 2014. In her deposition, Traver testified that Decedent was admitted to the Golden Living Facility following a hospitalization. N.T. (Traver Deposition), 11/1/18,

at 33.[8]  Traver stated that Decedent was transported from the hospital by an ambulance.  *Id.*  According to Traver, she was at home when she learned that Decedent would be transported to the Golden Living Facility, and she joined him later that day.  *Id.* at 33-34.

Traver testified that someone from the nursing home gave her papers to sign, but she could not remember whether that occurred on the same day that Decedent had arrived at the Golden Living Facility.  *Id.* at 42-44.  According to Traver, she and Decedent previously had talked about executing a power of attorney, but had never done so.  *Id.* at 54.

Traver also testified that the nursing home employee did not discuss the documents with her, and that she did not read the documents because she "didn't know [she] was supposed to."  *Id.* at 46-47.  *But see id.* at 51 (wherein Traver indicated that she did not remember much about signing the paperwork).  When presented with a copy of the Arbitration Agreement, Traver indicated that she had no recollection of the document, and she did not think she had received a copy of the Agreement.  *See id.* at 54-56; *see also id.* at 57 (wherein Traver explained that she typically retains signed documents).

---

[8] The transcript of Traver's deposition is attached as Exhibit A to the Golden Living Defendants' Supplemental Brief in Support of their Preliminary Objections.

Paulette Delevan ("Delevan"), the admissions director at the Golden Living Facility at the time of Decedent's residence, testified in her deposition that she had no memory of Traver or Decedent, and did not remember reviewing paperwork with either one of them. N.T. (Delevan Deposition), 11/1/18, at 8, 14.[9] According to Delevan, new residents are required to sign admissions paperwork immediately upon their arrival at the Golden Living Facility. *Id.* at 19. Delevan stated that, in instances where a new resident did not have a power of attorney document, her ordinary procedure was to "ask [her] counterpart at the hospital who would be the responsible party for the individual coming into the nursing home, who did they work with … and who signed the documents for them in the hospital." *Id.* at 15-16. Additionally, Delevan testified that in such an instance, she would ask the resident if they would agree to have a family member sign the paperwork on their behalf. *Id.* at 26.

We first examine whether Traver had express or implied authority to bind Decedent to the terms of the Arbitration Agreement. "Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. An agent with express authority also acquires implied authority, which exists in situations where the agent's actions are

---

[9] The transcript of Delevan's deposition is attached as Exhibit B to the Golden Living Defendants' Supplemental Brief in Support of their Preliminary Objections.

proper, usual and necessary to carry out express agency." **Wisler**, 124 A.3d at 323-24. Additionally, "[t]he creation of an agency relationship requires no specific formalities." **Walton v. Johnson**, 66 A.3d 782, 787 (Pa. Super. 2013) (citation omitted). "It is well settled that neither a husband nor wife has the power to act as agent for the other merely due to the marriage relationship." **Washburn**, 121 A.3d at 1014; **see also Wisler**, 124 A.3d at 323 (explaining that a familial relationship does not, by itself, create an agency relationship). Instead, we conduct a fact-specific inquiry to determine whether the principal intended to establish an agency relationship. **See Wisler**, 124 A.3d at 323. "[W]e do not assume agency by a mere showing that one person does an act for another." **Walton**, 66 A.3d at 787 (citation omitted).

As the trial court aptly stated in its Opinion, "it is undisputed that [] Traver did not have a power of attorney for [Decedent] at the time she executed the Agreements, nor was she his legal guardian. In addition, there was no testimony indicating that [] Traver executed the Arbitration Agreement[] at [Decedent's] direction or with his express consent." Trial Court Opinion, 5/1/19, at 2; **see also Washburn**, 121 A.3d at 1014-15 (concluding that wife was not husband's agent, despite her having previously signed and filed joint tax returns and healthcare forms on her husband's behalf, because there was no evidence that husband had authorized her to do so); **see generally Wisler**, 124 A.3d at 324 (because the nursing home had

- 11 -

the duty to ascertain the nature and extent of the written power of attorney, the patient's son, who had a power of attorney but was unable to produce it, did not have express authority to bind the patient to arbitration).  Thus, the Golden Living Defendants' arguments concerning express and implied agency are without merit.

We next consider whether Traver had apparent authority to act on Decedent's behalf in signing the Arbitration Agreement.

> Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act.  An agent cannot simply[,] by his own words, invest himself with apparent authority.  Such authority emanates from the action of the principal and not the agent.

*Wisler*, 124 A.3d at 324 (internal citations and quotation marks omitted).  Further, apparent agency "emanates from the action of the **principal** and not the agent." *Id.* (emphasis added).

The trial court concluded, and we agree, that "the record is devoid of the type of evidence on which the [c]ourt could conclude that [Decedent's] conduct, as the purported principal, could establish an agency relationship with [Traver] based upon apparent authority…."  Trial Court Opinion, 5/1/19, at 3.  There had been no prior dealings between Decedent and the Golden Living Defendants at the time of his admission, and it is unclear from the record whether Decedent was aware that Traver had signed the admissions documents, including the Arbitration Agreement, on his behalf.  *See Wisler*, 124 A.3d at 324-25 (declining to enforce an arbitration agreement signed by

patient's son at the time of admission, even where son had a power of attorney, because the defendants had failed to obtain a copy of the power of attorney or confirm with the patient whether his son's authority extended to signing such agreement); **Washburn**, 121 A.3d at 1015 (concluding that, despite wife's practice of signing joint tax returns and healthcare forms on her husband's behalf, the nursing home was unaware of such arrangement at the time of signing, and had no basis to infer that wife was authorized to act as her husband's agent). Additionally, despite testifying to her routine practice, Delevan had no specific recollection of her interactions with Decedent and Traver, and could therefore offer no additional insight into the alleged agency relationship. **See Wisler**, 124 A.3d at 325 (noting that the admissions coordinator of father's nursing home could not remember his admission to the facility).

Finally, we consider the Golden Living Defendants' assertion that Traver is estopped from denying her authority to sign the Arbitration Agreement. "Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of his or her belief that the purported agent was authorized to act on behalf of the principal." **Wisler**, 124 A.3d at 325 (citation, quotation marks and brackets omitted). Additionally, the third party must justifiably rely on its belief that an agency relationship existed. **Walton**, 66 A.3d at 788.

Here, the Golden Living Defendants offered no evidence that Decedent was aware of the Arbitration Agreement, or had authorized Traver to sign the

Agreement on his behalf. *See Wisler*, 124 A.3d at 32; *see also* Trial Court Opinion, 5/1/19, at 2. The Golden Living Defendants assert that Decedent never disavowed Traver's actions. Brief for Appellants at 18. However, we find it much more significant that the record fails to establish that Decedent either had an opportunity to review the Arbitration Agreement later, or that he was even aware of its existence. *See Wisler*, 124 A.3d at 325 (declining to enforce an arbitration agreement, which had been signed by the patient's son, because the nursing home failed to establish that the patient knew about the agreement or had authorized his son to sign it; there was no evidence of the patient's conduct when the agreements were executed; and the agreement was not presented to the patient later for ratification); *Washburn*, 121 A.3d at 1015-16 (explaining that arbitration agreement was "not part of the contractual *quid pro quo* for admission to the [nursing home] facility and its attendant benefits," where the arbitration agreement was separate from the admissions agreement, and admission was not conditioned on agreeing to arbitration). Thus, the Golden Living Defendants' claim concerning agency by estoppel also fails.

Based upon the foregoing, we conclude that the Golden Living Defendants have failed to establish that Traver had legal authority to execute the Arbitration Agreement on Decedent's behalf. Accordingly, as the trial court's findings are supported by substantial evidence, and we otherwise discern no abuse of the court's discretion, we affirm the Order denying the

Golden Living Defendants' Preliminary Objection in the nature of a Motion to Compel Arbitration.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/06/2020