J-A25042-19

2020 PA Super 23

| | | |
|---|---|---|
| IRENE TRAVER, ADMINISTRATRIX OF THE ESTATE OF CLAYTON L. TRAVER, DECEASED | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| RELIANT SENIOR CARE HOLDINGS, INC.; RELIANT LAKESIDE HOLDINGS, LLC, D/B/A/, LAKESIDE HEALTH AND REHABILITATION CENTER; RELIANT SENIOR CARE MANAGEMENT, LLC; RELIANT SENIOR CARE PENNSYLVANIA, LLC; RSC MASTER TENANT I, LLC; RSC CONSOLIDATED HOLDINGS, LLC; HCR MANORCARE, LLC; MANORCARE OF KINGSTON PA, LLC D/B/A MANORCARE HEALTH SERVICES - KINGSTON; MANORCARE HEALTH SERVICES, INC., A/K/A MANORCARE HEALTH SERVICES, LLC; HCR MANORCARE HEARTLAND, LLC; MANOR CARE, INC.; HCR MANORCARE, INC.; HCR IV HEALTHCARE, LLC.; HCR III HEALTHCARE, LLC; HCR II HEALTHCARE, LLC; HCR HEALTHCARE, LLC; HCRMC OPERATIONS, LLC; HCR MANORCARE OPERATIONS II, LLC. HCR MANOR CARE SERVICES, LLC; HEARTLAND EMPLOYMENT SERVICES, LLC; GOLDEN GATE NATIONAL SENIOR CARE, LLC; GGNSC WILKES-BARRE II LP D/B/A GOLDEN LIVING CENTER - SUMMIT; GGNSC EQUITY HOLDINGS, LLC; GGNSC HOLDINGS LLC; GGNSC ADMINISTRATIVE SERVICES LLC; GGNSC CLINICAL SERVICES, LLC; GOLDEN GATE ANCILLARY, LLC; WYNETTE WOLFORD, NHA; RIVER RUN, LLC D/B/A RIVER RUN REHABILITATION | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | |

AND NURSING CENTER; MOSHE      :
SCEINER; NATHAN STERN           :
                                :
                                :
APPEAL OF: HCR MANORCARE, LLC;  :
MANORCARE OF KINGSTON PA, LLC   :
D/B/A/ MANORCARE HEALTH         :
SERVICES - KINGSTON;            :
MANORCARE HEALTH SERVICES,      :
INC. A/K/A MANORCARE HEALTH     :
SERVICES, LLC; HCR MANORCARE,   :
INC.; HCR IV HEALTHCARE, LLC;   :
HCR III HEALTHCARE, LLC; HCR II :
HEALTHCARE, LLC; HCR            :
HEALTHCARE, LLC; HCRMC          :
OPERATIONS, LLC; HCR MANORCARE  :
OPERATIONS II, LLC; HEARTLAND   :
EMPLOYMENT SERVICES, LLC; HCR   :      No. 432 MDA 2019
MANOR CARE SERVICES, LLC

Appeal from the Order Entered February 7, 2019
in the Court of Common Pleas of Luzerne County
Civil Division at No(s):  2016-3983

BEFORE:  STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

OPINION BY MUSMANNO, J.:                **FILED: FEBRUARY 6, 2020**

HCR ManorCare, LLC; ManorCare of Kingston PA, D/B/A ManorCare

Health Services – Kingston ("the ManorCare Facility"); ManorCare Health

Services, Inc., A/K/A ManorCare Health Services, LLC; HCR ManorCare, Inc.;

HCR IV Healthcare, LLC; HCR II Healthcare, LLC; HCR Healthcare, LLC;

HCRMC Operations, LLC; HCR ManorCare Operations II, LLC; Heartland

Employment Services, LLC; and HCR ManorCare Services, LLC (collectively,

"the ManorCare Defendants"), appeal from the Order denying their

Preliminary Objection, in the nature of a Motion to Enforce the Arbitration

Agreement, to the Complaint filed by Irene Traver ("Traver"), as

Administratrix of the Estate of Clayton L. Traver, deceased ("the Estate").[1]
We affirm.

Between 2013 and 2015, Clayton L. Traver ("Decedent"), Traver's husband, resided in several different nursing home facilities on multiple occasions, including three separate residencies[2] at the ManorCare Facility, which is owned and operated by the ManorCare Defendants. Relevantly, each time Decedent was admitted to the ManorCare Facility, Traver signed an Admission Agreement and an Arbitration Agreement. Decedent died on March 20, 2015.

As Administratrix for the Estate, Traver initiated the instant action on April 14, 2016, by filing a Praecipe for Writ of Summons. Traver filed Praecipes

---

[1] The ManorCare Defendants' Preliminary Objections contained various other Motions, which the trial court denied in part and granted in part. However, the Motion to Enforce the Arbitration Agreement is the sole issue relevant to this appeal. Although interlocutory, an appeal may be taken as of right from an order denying a petition to compel arbitration. ***Bair v. Manor Care of Elizabethtown, PA, LLC***, 108 A.3d 94, 96 (Pa. Super. 2015); ***see also*** 42 Pa.C.S.A. § 7320(a)(1); Pa.R.A.P. 311(a)(8).

[2] Decedent resided in the ManorCare Facility during the periods of November 22, 2013, to December 20, 2013; April 25, 2014, to June 26, 2014; and February 25, 2015, to March 3, 2015.

to Reissue the Writ of Summons on May 12, 2016, and June 6, 2016.[3]

Traver filed a Complaint[4] on September 21, 2016, asserting claims of ordinary and corporate negligence, custodial neglect, survival and wrongful death. Traver sought punitive damages in four counts of the Complaint. Regarding the ManorCare Defendants, Traver alleged that, in an effort to maximize profits, the ManorCare Defendants intentionally reduced staffing levels and increased the number of sick, elderly, and frail patients requiring complex medical care. Traver claimed that this practice resulted in a recklessly high resident-to-staff ratio, and the failure of staff to properly manage and treat illnesses and injuries among the residents. Traver alleged that, as a result of inadequate care, Decedent suffered from a fall, pneumonia, multiple urinary tract infections, dehydration, skin tears, pressure ulcers, and scrotal dermatitis during his residencies.

---

[3] Traver later filed a Motion to Consolidate the instant action with a separate action (which is not included in the certified record) that she had filed against the owners and operators of the Lakeside Health and Rehabilitation Center. The trial court granted Traver's Motion to Consolidate on September 14, 2016.

[4] The Complaint named 31 total defendants. Golden Gate National Senior Care, LLC; GGNSC Wilkes-Barre II LP D/B/A Golden Living Center – Summit; GGNSC Holdings, LLC; GGNSC Equity Holdings, LLC; GGNSC Administrative Services, LLC; GGNSC Clinical Services LLC; Golden Gate Ancillary, LLC; and Wynette Wolford, NHA, filed a separate, related appeal, which is docketed at No. 452 MDA 2019. The remaining listed defendants are not parties to the instant appeal.

On October 11, 2016, the ManorCare Defendants filed Preliminary Objections, including a Motion to Enforce the Arbitration Agreement. Specifically, the ManorCare Defendants asserted that, upon Decedent's admission to the ManorCare facility, Traver executed a voluntary Arbitration Agreement on Decedent's behalf. The ManorCare Defendants pointed to the following relevant provisions of the Arbitration Agreement:

**<u>VOLUNTARY ARBITRATION AGREEMENT<br>("AGREEMENT")</u>**

**THE PARTIES ARE WAIVING THEIR RIGHT TO A TRIAL BEFORE A JUDGE OR JURY OF ANY DISPUTE BETWEEN THEM, PLEASE READ CAREFULLY BEFORE SIGNING. THE PATIENT WILL RECEIVE SERVICES IN THIS CENTER WHETHER OR NOT THIS AGREEMENT IS SIGNED. ARBITRATION IS DESCRIBED IN THE VOLUNTARY ARBITRATION PROGRAM BROCHURE COPY, ATTACHED AND MADE PART OF THIS AGREEMENT.**

\* \* \*

**1. Agreement to Arbitrate "Disputes":** All claims arising out of or related to this agreement, the Admission Agreement or any and all past or future admissions of the Patient [Decedent] at this Center [the ManorCare Facility], or any sister Center operated by any subsidiary of HCR ManorCare, Inc. ("Sister Center"), including claims for malpractice, shall be submitted to arbitration. …

\* \* \*

**8. Right to Change Your Mind:** This Agreement may be cancelled by written notice sent by certified mail to the Center's Administrator within 30 calendar days of the Patient's date of admission.

**9. Binding on Parties & Others:** The Parties intend that this Agreement shall benefit and bind the Center, its parents, affiliates, and subsidiary companies, and shall benefit and bind the Patient

J-A25042-19

> (as defined herein), his/her successors, spouses, children, next of
> kin, guardians, administrators, and legal representatives.

Preliminary Objections, 10/11/16, at ¶ 16 (bold in original); **see also id.**, Exhibit B (Arbitration Agreement).

Traver filed a Response, and a Memorandum in support thereof, on October 31, 2016. Traver alleged, *inter alia*, that the Arbitration Agreement was unenforceable because Traver lacked legal authority to execute a binding agreement on Decedent's behalf, as Decedent had never executed a power of attorney or otherwise designated her as his agent.

The ManorCare Defendants thereafter filed a Sur-Reply to Traver's Response, arguing that Traver had authority to execute the Arbitration Agreement under the doctrines of apparent authority and authority by estoppel. Traver filed a Response thereto.

Following discovery and briefing concerning the circumstances surrounding the execution of the Arbitration Agreement, the trial court entered an Order on February 7, 2019, denying the ManorCare Defendants' Motion to Enforce the Arbitration Agreement. The ManorCare Defendants filed a timely Notice of Appeal.[5, 6]

The ManorCare Defendants now raise the following issue for our review:

---

[5] The end of the 30-day appeal period was March 9, 2019, a Saturday. **See** 1 Pa.C.S.A. § 1908.

[6] The trial court did not order the ManorCare Defendants to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

- 6 -

> Whether the [t]rial [c]ourt erred in finding that [] Traver lacked authority to execute the Arbitration Agreement[] on behalf of her husband, [Decedent], when the record evidence demonstrated that there was a clear understanding between them that [] Traver was authorized to execute [the Arbitration Agreement] on [Decedent's] behalf, and that understanding was communicated to the ManorCare Defendants?

Brief for Appellants at 6.

The ManorCare Defendants claim that the trial court erred in concluding that Traver lacked the legal authority to execute the Arbitration Agreement on behalf of Decedent. *See id.* at 20-31. According to the ManorCare Defendants, the trial court ignored recent case law recognizing federal and state policies favoring arbitration. *Id.* at 20-23. The ManorCare Defendants allege that Traver had authority to act as Decedent's agent, and offer three separate arguments in this regard.

First, the ManorCare Defendants argue that Traver had express authority to execute the Arbitration Agreement on Decedent's behalf, because the couple had agreed to make decisions for one another as early as 2012, and had never formally executed a power of attorney simply due to the costs. *Id.* at 24. The ManorCare Defendants assert that Traver signed an Admission Agreement upon Decedent's arrival at the ManorCare Facility in 2013, and Decedent separately signed the Admission Agreement two days later. *Id.* According to the ManorCare Defendants, Decedent's independent signature signified his consent to be bound by the contract, as well as Traver's authority to sign on his behalf. *Id.* at 24-25.

The ManorCare Defendants next claim that Traver had apparent authority to act on behalf of Decedent because Traver indicated, in Decedent's presence, that she could sign the admissions documents on Decedent's behalf, and Decedent did not object. *Id.* at 25-26.

Finally, the ManorCare Defendants contend that Traver is estopped from denying her authority to sign on behalf of Decedent, because Decedent was aware that Traver had signed the admissions documents, and did not object or retract the documents. *Id.* at 26. The ManorCare Defendants again argue that by signing the Admission Agreement himself two days later, Decedent essentially acknowledged Traver's authority. *Id.* at 28, 30. Further, the ManorCare Defendants point out that Traver had signed the Arbitration Agreement for each of Decedent's three residencies at the ManorCare Facility, and claim that "Traver should not be permitted to take a position at this junction that is wholly inconsistent with her prior pattern and practice." *Id.* at 28.

We are mindful of the following standard of review:

> In reviewing a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration, we are limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. Since contract interpretation is a question of law, our review of the trial court's decision is *de novo* and our scope is plenary.

*Bair*, 108 A.3d at 96 (internal citations and quotation marks omitted).

Even if a party did not sign an arbitration agreement, he may be compelled to arbitrate under such agreement, based on common law principles of agency and contract. ***Wisler v. Manor Care of Lancaster, LLC***, 124 A.3d 317, 323 (Pa. Super. 2015). Here, the ManorCare Defendants, as the parties asserting agency, bear the burden of establishing an agency relationship between Decedent and Traver. ***See id.***

"Agency is a relationship whereby the principal manifests assent that another person (the agent) will act on the principal's behalf subject to the principal's control, and the agent agrees to do so." ***Id.***

> The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking[,] and the understanding of the parties that the principal is to be in control of the undertaking. An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel.

***Washburn v. N. Health Facilities, Inc.***, 121 A.3d 1008, 1012 (Pa. Super. 2015) (citations and quotation marks omitted).

In her deposition, Traver testified that Decedent was first admitted to the ManorCare Facility in November 2013, following a hospitalization. N.T. (Traver Deposition), 11/1/18, at 59.[7] Traver stated that Decedent was transported from the hospital by an ambulance, and she arrived at the ManorCare Facility later that day with her daughter and son. ***Id.*** at 64-65.

---

[7] The transcript of Traver's deposition is attached as Exhibit D to the ManorCare Defendants' Supplemental Brief in support of their Motion to Enforce the Arbitration Agreement.

- 9 -

Traver testified that she remembered meeting "the girl in the office" (*i.e.*, Paulette Delevan ("Delevan"), the admissions director at the ManorCare Facility) and being given papers to admit Decedent into the ManorCare Facility. *Id.* at 65-66; *see also id.* at 68-69 (wherein Traver stated that Delevan came to Decedent's room not long after Traver had arrived, and asked Traver to accompany her to her office to sign the paperwork). According to Traver, Delevan asked her if she was the person who could sign the papers for Decedent, and Traver indicated that she was responsible for Decedent. *Id.* at 67-68; *see also id.* at 68 (wherein Traver explained that she managed the household; she sometimes signed documents on Decedent's behalf; and Decedent was aware that she sometimes signed documents for him); *id.* at 74 (wherein Traver testified that she and Decedent had an understanding that they could act on each other's behalf). Traver also explained that she and Decedent had talked about executing a power of attorney before he had gotten sick, but that they did not have the money to do so. *Id.* at 73-74.

Traver testified that she could not remember any of the documents being explained to her before she signed them. *Id.* at 70-71. When presented with a copy of the Admission Agreement, Traver testified that the document did not look familiar, and she did not remember signing it. *Id.* at 78-79, 81. Traver was also unable to confirm whether she had read the Arbitration Agreement before she had signed it. *Id.* at 88-89. Further, Traver testified that, prior to initiating the instant action, she did not know what arbitration

was, and was unaware that there are ways to resolve disputes outside of a courtroom. *Id.* at 62-63.[8]

Delevan testified in her deposition that she had no memory of Traver or Decedent, and did not remember reviewing paperwork with either one of them. N.T. (Delevan Deposition), 11/1/18, at 8, 14.[9] Delevan stated that in instances where a new resident did not have a power of attorney document, her ordinary procedure was to "ask [her] counterpart at the hospital who would be the responsible party for the individual coming into the nursing home, who did they work with … and who signed the documents for them in the hospital." *Id.* at 15-16. According to Delevan, her routine practice was to ask the resident who they would like to sign admissions paperwork on their behalf before presenting the paperwork to a family member. *Id.* at 28. *But see id.* at 34 (wherein Delevan testified that "it was a different scenario with everyone coming into the nursing home."). Delevan stated that she would tell the resident that she was taking their family member to her office to complete paperwork, and would tell the resident who had signed on their behalf. *Id.* at 29. Delevan also testified that she typically presented the signed documents to the resident. *Id.* at 29-30. Despite having no recollection of Traver or

---

[8] Traver was not specifically questioned about any agreements she would have signed at the start of Decedent's other residencies at the ManorCare Facility.

[9] The transcript of Delevan's deposition is attached as Exhibit E to the ManorCare Defendants' Supplemental Brief in support of their Motion to Enforce the Arbitration Agreement.

Decedent, Delevan testified that the signatures and dates on the Admission Agreement indicate that, in accordance with her routine procedure, Traver had signed the document on behalf of Decedent, and Delevan had then presented a copy of the signed document to Decedent. *Id.* at 32.

We first examine whether Traver had express authority to bind Decedent to the terms of the Arbitration Agreement. "Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters." *Wisler*, 124 A.3d at 323. Additionally, "[t]he creation of an agency relationship requires no specific formalities." *Walton v. Johnson*, 66 A.3d 782, 787 (Pa. Super. 2013) (citation omitted). "It is well settled that neither a husband nor wife has the power to act as agent for the other merely due to the marriage relationship." *Washburn*, 121 A.3d at 1014; *see also Wisler*, 124 A.3d at 323 (explaining that a familial relationship does not, by itself, create an agency relationship). Instead, we conduct a fact-specific inquiry to determine whether the principal intended to establish an agency relationship. *See Wisler,* 124 A.3d at 323. "[W]e do not assume agency by a mere showing that one person does an act for another." *Walton*, 66 A.3d at 787 (citation omitted).

As the trial court aptly noted in its Opinion, "it is undisputed that [] Traver did not have a power of attorney for [Decedent] at the time she executed the Agreements, nor was she his legal guardian." Trial Court Opinion, 5/1/19, at 2. Traver's status as Decedent's wife does not, by itself,

establish an agency relationship. ***Washburn***, 121 A.3d at 1014. Further, nothing in the record suggests that Decedent expressly indicated to Delevan that Traver could sign the documents on his behalf. ***See id.*** at 1014-15 (concluding that wife was not husband's agent, despite her having previously signed and filed joint tax returns and healthcare forms on her husband's behalf, because there was no evidence that husband had authorized her to do so); ***see generally Wisler***, 124 A.3d at 324 (because the nursing home had the duty to ascertain the nature and extent of the written power of attorney, the patient's son, who had a power of attorney but was unable to produce it, did not have express authority to bind the patient to arbitration).

We next consider whether Traver had apparent authority to act on Decedent's behalf in signing the Arbitration Agreement.

> Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. An agent cannot simply[,] by his own words, invest himself with apparent authority. Such authority emanates from the action of the principal and not the agent.

***Wisler***, 124 A.3d at 324 (internal citations and quotation marks omitted).

The ManorCare Defendants' argument concerning apparent authority relies primarily on Traver's alleged representation to Delevan that she was permitted to sign the necessary admissions documents on his behalf. However, apparent agency "emanates from the action of the **principal** and not the agent." ***Id.*** (emphasis added). The trial court concluded, and we agree, that "the record is devoid of the type of evidence on which the [c]ourt

- 13 -

could conclude that [Decedent's] conduct, as the purported principal, could establish an agency relationship with [Traver] based upon apparent authority…." Trial Court Opinion, 5/1/19, at 3. There had been no prior dealings between Decedent and the ManorCare Defendants at the time of his 2013 admission, and it is unclear from the record whether Decedent was aware that Traver was signing the admissions documents, including the Arbitration Agreement, on his behalf. *See Wisler*, 124 A.3d at 324-25 (declining to enforce an arbitration agreement signed by patient's son at the time of admission, even where son had a power of attorney, because the defendants had failed to obtain a copy of the power of attorney or confirm with the patient whether his son's authority extended to signing such agreement); *Washburn*, 121 A.3d at 1015 (concluding that, despite wife's practice of signing joint tax returns and healthcare forms on her husband's behalf, the nursing home was unaware of such arrangement at the time of signing, and had no basis to infer that wife was authorized to act as her husband's agent). Additionally, Delevan had no specific recollection of her interactions with Decedent and Traver, and could therefore offer no additional insight into the alleged agency relationship. *See Wisler*, 124 A.3d at 325 (noting that the admissions coordinator of father's nursing home could not remember his admission to the facility).

Finally, we consider the ManorCare Defendants' assertion that Traver is estopped from denying her authority to sign the Arbitration Agreement. "Authority by estoppel occurs when the principal fails to take reasonable steps

to disavow the third party of his or her belief that the purported agent was authorized to act on behalf of the principal." ***Wisler***, 124 A.3d at 325 (citation, quotation marks and brackets omitted). Additionally, the third party must justifiably rely on its belief that an agency relationship existed. ***Walton***, 66 A.3d at 788.

The ManorCare Defendants offered no evidence that Decedent was aware of the Arbitration Agreement or had authorized Traver to sign the Agreement on his behalf. ***See Wisler***, 124 A.3d at 32. Although the ManorCare Defendants argue that Decedent had an opportunity to review the documents two days after Traver had signed them, our review of the record confirms that Decedent did not, in fact, separately sign the Arbitration Agreement, as he had the Admissions Agreement. ***See*** Preliminary Objections, 10/11/16, Exhibit B (Arbitration Agreement). As the ManorCare Defendants concede in their brief, the Arbitration Agreement is a stand-alone agreement. Brief for Appellants at 9. Indeed, the Arbitration Agreement itself states that "the patient will receive services … whether or not this agreement is signed." Objections, 10/11/16, Exhibit B (Arbitration Agreement) (capitalization omitted). Thus, we cannot agree that Decedent ratified the Arbitration Agreement after Traver had signed it. ***See Wisler***, 124 A.3d at 325 (declining to enforce an arbitration agreement, which had been signed by the patient's son, because the nursing home failed to establish that patient knew about the agreement or had authorized his son to sign it; there was no evidence of patient's conduct when the agreements were executed; and the

agreement was not presented to patient later for ratification); **Washburn**, 121 A.3d at 1015-16 (explaining that arbitration agreement was "not part of the contractual *quid pro quo* for admission to the [nursing home] facility and its attendant benefits," where the arbitration agreement was separate from the admissions agreement, and admission was not conditioned on agreeing to arbitration).

Based upon the foregoing, we conclude that the ManorCare Defendants failed to establish that Traver had legal authority to execute the Arbitration Agreement on Decedent's behalf. Accordingly, as the trial court's findings are supported by substantial evidence, and we otherwise discern no abuse of the court's discretion, we affirm the Order denying the ManorCare Defendants' Preliminary Objection in the nature of a Motion to Enforce the Arbitration Agreement.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/06/2020

- 16 -