J-A12010-22

2022 PA Super 100

| | | |
|---|---|---|
| DOREEN ADAMS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF MARGHERITA DAQUINO | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| MT. LEBANON OPERATIONS, LLC D/B/A MT. LEBANON REHABILITATION AND WELLNESS CENTER | : : : : : : | No. 1176 WDA 2021 |
| Appellant | : | |

Appeal from the Order Entered September 13, 2021
In the Court of Common Pleas of Allegheny County
Civil Division at GD-20-012823

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.*

OPINION BY MURRAY, J.:                              **FILED: MAY 27, 2022**

Mt. Lebanon Operations, LLC d/b/a Mt. Lebanon Rehabilitation and

Wellness Center (Appellant), appeals from the order overruling Appellant's

preliminary objections (POs) requesting transfer to binding arbitration of the

wrongful death and survival claims[1] of Appellee, Doreen Adams (Adams),

---

* Retired Senior Judge assigned to the Superior Court.

[1] Pennsylvania's Wrongful Death Act, 42 Pa.C.S.A. § 8301, "allows a spouse, children or parents of a deceased to sue another for a wrongful or neglectful act that led to the death of the deceased." **Dubose v. Quinlan**, 125 A.3d 1231, 1238 (Pa. Super. 2015) (citation omitted).  Survival actions, under 42 Pa.C.S.A. § 8302, "permit a personal representative to enforce a cause of action which has already accrued to the deceased before [her] death." **Pastierik v. Duquesne Light Co.**, 526 A.2d 323, 326 (Pa. 1987) (emphasis and citation omitted).

individually and as administratrix of the estate of her mother, Margherita Daquino (Decedent). We affirm.

Adams filed a complaint asserting Appellant's negligent care of Decedent resulting in Decedent's death. *See* Complaint, 5/17/21, at ¶¶ 7-16 (claiming shortly after Decedent's admission to Appellant's facility "[o]n November 24, 2018, [] staff noted [Decedent] had a swallowing disorder that affected her oral intake," and Decedent "needed to be monitored during meals for aspiration." Decedent aspirated on food and died on January 25, 2019, after allegedly being "left unsupervised").

When Decedent was admitted to Appellant's facility in November 2018, Adams executed an Admission Agreement with a provision that required all disputes be resolved in binding arbitration. *See* Admission Agreement, 11/29/18, at 21-22 (attached to Appellant's July 23, 2021, POs as Ex. B). In a separate section of the Admission Agreement titled "Legal Representative," Adams circled "Yes" in response to a question asking whether Adams was Decedent's power of attorney (POA). Admission Agreement, 11/29/18, at 3. In a third section of the Admission Agreement addressing Decedent's "Assigned Authorized Resident Representative," Adams indicated she was "chosen by [Decedent] but not also authorized by State or federal law[.]"[2] *Id.*

_____

[2] For "Assigned Authorized Resident Representatives" — like Adams — who were "not also authorized by State or Federal law" to act on the resident's behalf, the Admission Agreement asked the representative to check boxes

- 2 -

at 10, ¶ (c). The Admission Agreement further directed that Assigned Authorized Resident Representatives "attach documentation" to the Admission Agreement evincing their legal status regarding representation of the resident. *Id.* Importantly, **there was no POA, or any legal documentation, attached to the Admission Agreement, nor was any POA ever produced in this case**.

Appellant filed POs to the complaint, asking the trial court to dismiss Adams's complaint and/or compel arbitration of her claims because "Adams executed a mandatory binding arbitration agreement as Power of Attorney," and no "generally applicable contract defenses, such as fraud, duress, or unconscionability . . . are applicable to the current matter." Preliminary Objections, 7/23/21, at ¶¶ 12, 18 (citation omitted).

Adams filed a response, arguing the trial court

> should overrule [Appellant's POs] to dismiss [Adams's] claims and compel arbitration because a valid and enforceable Arbitration does not exist because [Appellant] did not submit evidence of power of attorney which bestowed authority upon [Adams] to sign the Arbitration Agreement on Decedent's behalf.

Response, 9/3/21, at ¶ 5; *see also id.* at ¶ 18 (stating "the Arbitration Agreement is procedurally and substantively unconscionable as a matter of

---

specifying the "rights delegated" to the representative. Admission Agreement at 10-11. The boxes Adams checked included rights concerning health care and financial decision making, filing of grievances, and consent on Decedent's behalf. *Id.* **The Admission Agreement did not list the right to waive Decedent's litigation rights in favor of arbitration as a "right delegated."**

- 3 -

law due to its [] nature and [is] unreasonably favorable" to Appellant). Adams

emphasized Appellant

> failed to provide a copy of the Power of Attorney which would authorize [Adams] to sign the Arbitration Agreement on Decedent's behalf. Moreover, [Appellant] failed to provide any other evidence of Decedent's manifestation to [Appellant] that [Adams] was authorized to sign the Arbitration Agreement on behalf of Decedent, whether it be through express or implied authority. Agency cannot be inferred merely because [Adams] is the daughter of Decedent.

Brief in Opposition to POs, 9/3/21, at 6.

The trial court held a hearing, and on September 13, 2021, entered the order overruling Appellant's POs. Appellant filed a timely appeal, followed by a court-ordered Pa.R.A.P. 1925 concise statement.[3] The trial court then issued an opinion deeming the arbitration agreement invalid and unenforceable because Appellant "failed to prove that Ms. Adams had a valid Power of Attorney and thus the power to bind [Decedent]." Trial Court Opinion, 1/6/22, at 2 (unnumbered). The court also opined that the arbitration provision was procedurally and substantively unconscionable. *Id.* at 3-4 (concluding Adams "functionally had no choice but to promptly sign this agreement" upon Decedent's admission; the arbitration provision "is buried in a 26-page admission packet"; and the provision "does not explicitly state that by agreeing, the signor is giving up their right to a judge or jury.").

---

[3] An order denying an application to compel arbitration is appealable as of right. *See* Pa.R.A.P. 311(a)(8); 42 Pa.C.S.A. § 7320(a)(1); *Collier v. Nat'l Penn Bank*, 128 A.3d 307, 309 (Pa. Super. 2015).

Appellant presents a single issue for our review:

Whether the court below erred by overruling Preliminary Objections seeking to compel the matter to arbitration pursuant to a binding agreement to arbitrate disputes?

Appellant's Brief at 1.

In an appeal from an order overruling preliminary objections seeking to compel arbitration, our review "is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion[.]" **Pisano v. Extendicare Homes, Inc.**, 77 A.3d 651, 654 (Pa. Super. 2013). "We employ a two-part test to determine whether the trial court should have compelled arbitration: 1) whether a valid agreement to arbitrate exists, and 2) whether the dispute is within the scope of the agreement." **Washburn v. Northern Health Facilities, Inc.**, 121 A.3d 1008, 1012 (Pa. Super. 2015). Instantly, our analysis of the first prong informs our disposition.

"When addressing the issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration." **Cardinal v. Kindred Healthcare, Inc.**, 155 A.3d 46, 53 (Pa. Super. 2017) (citation omitted); **see also Pisano**, 77 A.3d at 660 ("Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the Federal Arbitration Act," 9 U.S.C.S. §§ 1-16). However, the mere

"existence of an arbitration provision and a liberal policy favoring arbitration does not require the rubber stamping of all disputes as subject to arbitration." ***Pisano***, 77 A.3d at 661 (citation omitted).

Appellant argues the arbitration provision was valid and enforceable because Adams executed the Admission Agreement as Decedent's POA. ***See*** Appellant's Brief at 13-22. Appellant asserts,

> the argument that since [Appellant] did not provide a copy of the POA documentation to the Court, [Appellant] failed to prove that [Adams] had authority to sign the Arbitration Agreement on behalf of [Decedent] fails, as the only evidence of record in this case is Adams's indication in the Admissions paperwork that she was in fact [Decedent's] POA.

***Id.*** at 13; ***see also id.*** at 16 ("Adams does not confirm or dispute that she was [Decedent's] POA."). Appellant also disputes the trial court's determination that the arbitration provision was procedurally and substantively unconscionable. ***See id.*** at 18-23.

For an arbitration agreement between a nursing facility and a resident's purported POA agent to be valid, there must be an agency relationship between the resident/principal and the POA agent. ***Petersen v. Kindred Healthcare, Inc.***, 155 A.3d 641, 645 (Pa. Super. 2017). We have explained:

> A party can be compelled to arbitrate under an agreement, even if he or she did not sign that agreement, if common-law principles of agency and contract support such an obligation on his or her part. . . . An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Agency cannot be inferred from mere relationships or family ties, and **we do not assume agency merely because one person acts on behalf of another**. Rather, we look to facts to determine

- 6 -

whether the principal expressly or impliedly intended to create an agency relationship. To that end, family ties **may** be relevant when considered with other factors evincing agency. Finally, **the party asserting the agency relationship bears the burden of proving it by a preponderance of the evidence**.

Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. . . . A valid, durable power of attorney constitutes a grant of express authority per its terms. *See* 20 Pa.C.S.A. § 5601(a).

* * *

. . . Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. An agent cannot simply by his own words, invest himself with apparent authority. Such authority emanates from the action of the principal and not the agent.

*Wisler v. Manor Care of Lancaster PA, LLC*, 124 A.3d 317, 323-24 (Pa. Super. 2015) (some citations omitted, emphasis added).

Adams argues the trial court properly determined the arbitration provision was unenforceable, stating:

Appellant had a duty to prove what authority, if any, [Adams] had at the time that she signed the [Admission] Agreement. The record contains conflicting information as to whether [Adams] had a valid Power of Attorney at the time that she signed the agreement, and the "Admission Agreement" does not specifically indicate that the designated representative would have authority to enter into any legal agreements. The mere fact that [Appellant] was aware of the possibility of the existence of a Power of Attorney created a duty upon [Appellant] to inquire into the extent and/or limitations of [Adams's] authority to act on behalf of the Decedent, and to obtain a copy of such Power of Attorney. [] Appellant has failed to prove that [Adams] had any authority to bind the Decedent to an arbitration agreement and, therefore, the "arbitration agreement" is not valid.

Adams's Brief at 9-10. Adams further asserts that ***Wisler***, ***supra*** is controlling. ***Id.*** at 13-14. We agree.

In ***Wisler***, the son of a nursing facility resident (H. Randall Wisler), executed admissions documents on behalf of the resident, purportedly as POA; the documents included two arbitration agreements drafted by the nursing facility (ManorCare). ***Wisler***, 124 A.3d at 320. ManorCare **never obtained a copy of a POA, nor was a POA produced in discovery**. ***Id.*** After the resident died, executors of the resident's estate brought a survival action against ManorCare claiming negligence. ***Id.*** ManorCare filed POs to compel arbitration, which the trial court overruled. ***Id.*** at 320-21. This Court affirmed, concluding that H. Randall Wisler lacked express authority to sign the arbitration agreement on the resident's behalf. We explained:

> **ManorCare had a duty to ascertain the nature and extent of the written power of attorney. The law required ManorCare to determine the extent of H. Randall Wisler's purported authority as decedent's agent at the time of reliance. ManorCare failed to do so at its peril.**
>
> Additionally, to the extent that the power of attorney granted H. Randall Wisler the ability to sign admissions paperwork for decedent, nothing indicates that it also allowed him to waive litigation rights in favor of arbitration. As the trial court noted, **the authority to consent to medical treatment and care on behalf of a principal does not necessarily entail the authority to consent to arbitration**, agreement to which was not a precondition to be admitted to ManorCare[.]

***Id.*** at 324 (emphasis added, citations omitted).

- 8 -

We agreed with the trial court that ManorCare "failed to prove H. Randall Wisler acted under apparent authority in signing the arbitration agreement," *id.* at 324-25, stating that

> authority emanates from the principal's action, and not the agent's. Thus, even if H. Randall Wisler did inform staff at ManorCare [] that he had a power of attorney for his father and that he had the authority to sign documents on his father's behalf, **no one obtained a copy of the power of attorney or confirmed with decedent whether H. Randall Wisler, in fact, had such authority and if it extended to signing a waiver of his constitutional right to a jury trial.** ManorCare can point to no word or action by the purported principal that led it to believe that decedent had granted H. Randall Wisler the authority to sign any papers on his behalf.

*Id.* at 325 (citing Trial Court Opinion, 6/27/14, at 10-11) (bold emphasis added). We concluded the trial court "did not err in refusing to compel arbitration. Therefore, we need not consider alternative grounds in favor of affirmance." *Id.* at 327.

Appellant attempts to distinguish *Wisler*, stating the "key difference between *Wisler* and the instant case is that in *Wisler*, the [trial c]ourt had the benefit of discovery," whereas in "the instant case, the trial court did not order that discovery be undertaken in order to determine whether Ms. Adams was in fact [Decedent's] POA[.]" Appellant's Brief at 17; *see also* Reply Brief for Appellant at 1 (same). We are not persuaded by this distinction, where Appellant had the burden of proving Decedent authorized Adams to be her POA, yet Appellant "can point to no word or action by the purported principal[, Decedent,] that led it to believe [D]ecedent had granted [Adams] the

- 9 -

authority to sign any papers on [Decedent's] behalf." **Wisler**, 124 A.3d at 325; **see also Petersen**, 155 A.3d at 645 ("a party dealing with an agent, known by the former to be acting [] under an express grant of authority (such as a power of attorney), has a duty to take notice of the nature and extent of the authority conferred.").

Here, the Admission Agreement drafted by Appellant **required documentation be attached** to prove Adams's legal representative status. **See** Admission Agreement, 11/29/18, at 10, ¶ (c).[4]  Appellant thus failed to establish Adams had authority to agree to the arbitration provision, and the trial court did not abuse its discretion in overruling Appellant's POs seeking to compel arbitration.  **See Wisler**, **supra** at 325; **see also Walton v. Johnson**, 66 A.3d 782, 788 (Pa. Super. 2013) (upholding denial of POs of defendant/health care facility seeking to enforce arbitration agreement between defendant and patient, signed by patient's mother on patient's behalf, where defendant failed to prove agency relationship between patient and her mother, noting defendant "offered no evidence of a writing expressly granting [patient's mother] actual authority." (citation omitted)); **Traver v. Reliant Senior Care Holdings, Inc.**, 228 A.3d 280, 288-89 (Pa. Super.

---

[4] The Admission Agreement contains conflicting information regarding Adams's legal representative capacity.  **Compare** Admission Agreement, 11/29/18, at 3 (Adams circled "Yes" in response to a question asking whether she was Decedent's POA), **with id.** at 10, ¶ (c) (indicating Adams was "chosen by [Decedent] but **not also authorized by State or federal law**" (emphasis added)).

- 10 -

2020) (upholding denial of defendant/nursing facility's POs seeking to enforce arbitration agreement between defendant and deceased resident, signed by resident's wife, where defendant failed to prove existence of agency relationship); *but cf. Gollick v. Sycamore Creek Healthcare Grp., Inc.*, 260 A.3d 171, at **6-7 (Pa. Super. 2021) (unpublished memorandum) (distinguishing *Wisler* and reversing denial of defendant/nursing facility's POs requesting transfer of plaintiff's survival claim to arbitration, where defendant **did produce** a POA proving agency between decedent and her son who she authorized as POA).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/27/2022