JOHN SENSER and others *against* ANDREW BOWER and wife.

For civil purposes, reputation and cohabitation are sufficient evidence of marriage.

In all cases of conflicting presumptions on the subject of legitimacy, that in favour of innocence shall prevail.

The alienation of an improvement right by the widow, after the death of her husband, leaving an infant two years of age, will not bar the right of such infant to recover the land, when it arrives at full age, even if the consideration received by the widow should have been applied to the support and maintenance of the child.

*Query ?* Whether there can be an abandonment of a right by an infant.

ERROR to the special court of Centre county, (*Reed,* president.)

This was an action of ejectment for one hundred and fifty acres of land brought by *Andrew Bower* and *Susanna* his wife, against *John Senser* and others.

The evidence upon which the plaintiff's title was founded, was, that about 1796, *Daniel Zinn* left the house of a neighbour, with *Catherine Kitelinger,* for the purpose of being married, they soon returned, and it was understood that they were then man and wife; that they lived and cohabited together as such, and had issue one daughter, the present plaintiff. That about 1798, they moved to the land in dispute, cleared two or three acres and fenced it, built a cabin and stable, and resided there about three years, when *Daniel Zinn* died.

The evidence given for the defendants, as they contended, established two grounds of defence. First, they proved that many years before the alleged marriage of *Catherine Kitelinger* with *Daniel Zinn,* she and *Jacob Kitelinger* left the house of a neighbour, to go and be married, that they returned soon after as man and wife, lived and cohabited together as such, for several years, and had issue two sons; that *Jacob Kitelinger* went to the western country,

(John Senser and others, *v.* Andrew Bower and wife.)

and had been absent about seven years, when his wife married *Daniel Zinn;* there had been a report that he was dead, but about a year after *Daniel Zinn* died he returned and took up with his wife again. Upon this evidence, the defendants contended that the second marriage of *Catherine Kitelinger* was illegal and void, and the issue of it illegitimate; and therefore the plaintiffs could not recover.

The second ground of defence was—that upon the death of *Daniel Zinn,* leaving his widow and infant daughter, the present plaintiff, the actual settlement was not complete, and at all events insufficient to support the widow and child, and therefore the widow sold what right they had to one *Hinton,* under whom the defendants claim, and have been in possession for twenty-three years before suit brought, having, during that time, made valuable improvements. It was also in proof that *Susanna,* the plaintiff, was raised and supported by her mother.

Many points of law, growing out of these facts were put to the court by the counsel on one side and the other, upon which they were requested to instruct the jury, all of which were resolved into two questions. First. Whether, under the evidence, *Susanna Bower* was the *legitimate* daughter of *Daniel Zinn,* upon whom the law would cast an inheritance, and—Second. Whether the right which *Daniel Zinn* had, by virtue of the acts done upon the land, was such an inheritance as the law would cast upon the heir; or whether it was not such an imperfect right that might pass as a chattel.

The court below was of opinion, that in every aspect of the case, the plaintiffs were entitled to recover; and so instructed the jury. To which opinion the defendants took an exception.

*Potter* and *Blanchard,* for plaintiffs in error.

The proof of each marriage of *Catherine Kitelinger* was the same, and the first marriage being first established, no other marriage could be established by the same kind of proof: the same witness who proved the marriage of the plaintiff's father and mother, also proved that the mother was then the wife of *Jacob Kitelinger,* who was in full life. The first marriage being thus proved by legal evidence, there can be no presumption of a second marriage, because it is a presumption of crime. The children of the first marriage are certainly legitimate, and that of the second is as certainly not so.

The inceptive right to the land in dispute was sold for a valuable consideration, by the mother, when the plaintiff was two years old, and incapable of maintaining that right; and that consideration applied to her benefit and support: can she now, after the lapse of twenty-three years, recover this land from the defendants who have made it valuable by improvements, and who never had notice of any claim of the plaintiff. The plaintiff is now claiming

in an equitable action, and surely she is met by a superior equity in the defendants. 1 *Yeates,* 523.

An infant cannot maintain that kind of occupancy which is necessary to give or complete a right under the act of assembly. *Mobely* v. *Oaker,* 3 *Yeates,* 200.   *Clarke* v. *Heckelhorn, id.* 269.   11 *Serg. & Rawle,* 341.   The effect of the infant receiving the benefit of the sale by the mother, 2 *Dissesure,* 232.   3 *Dissesure,* 20–24. 4 *Dissesure,* 445.. As to the legitimacy of the plaintiff, 3 *Black. Com.* 92. *Davis* v. *Houston,* 2 *Yeates,* 289. As to the lapse of time before suit brought.   *Jackson* v. *Thomas,* 16 *Johns.* 293   *Jackson* v. *Wheat.* 18 *Johns.* 40.   5 *Day,* 181.   *Jackson, ex dem,* v. *Ellis,* 13 *Johns.* 118–40–513.   As to the defendants', want of notice.   *Day* v. *Dunham,* 2 *Johns. Chan.* 182.   *Billington* v. *Welsh,* 5 *Bin.* 129.   *Jackson* v. *Henry,* 10 *Johns.* 185.   *Hibernia Turnpike Co.* v. *Henderson,* 8 *Serg. & Rawle,* 219.

*Petrikin* and *Valentine,* for defendants in error, whom the court declined to hear.

The opinion of the court was delivered by

GIBSON, C. J.—For civil purposes, reputation and cohabitation are sufficient evidence of marriage; and there is evidently enough in the case to show that the plaintiff's father and mother were married in fact.   But there is said to be the same evidence of a precedent marriage of the mother with another man, who was alive at her second marriage; and hence a supposed dilemma. But the proof being equal, the presumption is in favour of innocence; and so far is this carried in the case of conflicting presumptions, that the one in favour of innocence shall prevail.   *Starkie on Ev. pt. IV.* 1248–9.   It must be admitted that this principle is not immediately applicable here, inasmuch as there is no conflicting evidence, and the facts supposed to result, are consistent with each other; but it establishes that the same proof that is sufficent to raise a presumption of innocence, may be inadequate to a presumption of guilt.   To say the least, then, the jury were not bound to draw the same conclusion of marriage from the same evidence, without regard to consequences; and to have instructed them that they were, would have been error.   On the contrary, they were bound to make every intendment in favour of the plaintiff's legitimacy, which was not necessarily excluded by the proof.   But was the evidence in fact, exactly balanced?   The presumption of marriage from cohabitation may be rebutted by evidence of separation, without an apparent rupture.   *Jackson* v. *Claw,* 18 *Johns.* 346. And here there was a separation, without an apparent cause, for eleven years, which independent of any rule of presumption, would be sufficient to give the evidence of legitimacy a decisive preponderance.

(John Senser and others, *v.* Andrew Bower and wife.)

The facts connected with the remaining point are, that the plaintiff's father made an actual settlement on the land in 1798, by building two cabins on it in succession, clearing and cultivating a portion of it, designating his boundaries, and residing on it till his death in 1800; after which, his widow sold the improvement to a person under whom the defendants claim. The lessee of *Mobely* v. *Oaker*, 3 *Yeates*, 200, and the lessee of *Clark* v. *Heckethorn, id.* 269, are inapplicable to the case of an improvement so recent as the present. At an early day this species of title was of so little account, that it was sold as a chattel in a course of administration. 2 *Yeates*, 378; but in 1800, it had gradually acquired the consistence of an indefeasible estate; and although it might still be lost by abandonment, the evidence of an intention to produce that effect, was required to be clear and satisfactory. Here there is no pretence of abandonment, as both parties claim by the improvement begun by *Zinn*, the title to which was clearly in his daughter when it was sold by her mother; so that the fifth section of the limitation act of 1785, (which has been held to operate only on equitable titles then existing,) being out of the way, the question simply is, whether she is barred by her mother's alienation; and it is clear that, unless there is something peculiar in the case, she is not. No equity arises from the supposed application of the price to her maintenance. A sale for that object could be ordered only by the Orphans' Court, with which the law has deposited the requisite discretion. Neither could a supposed necessity to interpose for the preservation of the inheritance from a total loss, by abandonment of the improvement, give an additional sanction to the act of the mother. I will not undertake to say that there may not, even at this day, be an abandonment by an infant. Whether any thing but an intentional relinquishment of the title, of which the circumstances are but evidence, can be effectual, and whether an infant be not incapable of such relinquishment, by reason of want of discretion, are points that may hereafter be worthy of consideration. But, whatever be the motive, it is clear that a parent has no power to divest the infant's estate; and we discover nothing in the case to induce us to disturb the judgment.

Judgment affirmed.