**[J-7A-2025 and J-7B-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**


| | | |
|---|---|---|
| JENNIFER SANTIAGO AND SAMUEL SANTIAGO, | : | No. 24 EAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| Appellees | : | Superior Court entered on March 21, |
| | : | 2023, at No. 2615 EDA 2021, |
| | : | affirming the Order of the Court of |
| v. | : | Common Pleas of Philadelphia |
| | : | County, Civil Division, entered on |
| | : | August 23, 2021, at No. 002154 |
| PHILLY TRAMPOLINE PARK, LLC I/P/A SKY ZONE, D/B/A SKY ZONE TRAMPOLINE PARK D/B/A SKY ZONE PHILADELPHIA, SKY ZONE PHILADELPHIA, INC., SKY ZONE TRAMPOLINE PARK A/K/A SKY ZONE PHILADELPHIA, | : : : : : : : : | ARGUED:  March 5, 2025 |
| | : | |
| Appellants | : | |
| | | |
| ALESSANDRA SHULTZ, INDIVIDUALLY AND AS P.N.G. FOR ROCCO SHULTZ, A MINOR, | : : : | No. 25 EAP 2023 |
| | : | Appeal from the Order of the |
| | : | Superior Court entered on March 21, |
| Appellee | : | 2023, at No. 664 EDA 2022, |
| | : | affirming the Order of the Court of |
| | : | Common Pleas of Philadelphia |
| v. | : | County, Civil Division, entered on |
| | : | January 25, 2022, at No. 200701660 |
| | : | |
| SKY ZONE, LLC, | : | ARGUED:  March 5, 2025 |
| | : | |
| Appellant | : | |


**OPINION**


**JUSTICE DONOHUE**                                           **DECIDED: September 25, 2025**

Appellants, Philly Trampoline Park, LLC and Sky Zone (collectively "Sky Zone"), operate trampoline parks. Patrons who wish to enter the parks must execute Sky Zone's "Participation Agreement, Release and Assumption of the Risk" document ("Agreement"). When the patron is a minor, a parent is required to execute the Agreement on the minor's behalf. These appeals involve minors who were injured at Sky Zone facilities. In each case, only one parent signed the Agreement on the behalf of their child. The Court is asked to resolve whether, under these circumstances, the Agreement is enforceable against the claims of the injured minor and the non-signing parent. We conclude that it is not and therefore affirm the orders of the Superior Court.

**Facts**

In February 2019, Jennifer Santiago took her two children to a Sky Zone located in Philadelphia. Ms. Santiago was required to execute the Agreement for each child.[1] The Agreement contains terms acknowledging a voluntary assumption of risk and a release of liability, among others provisions. It also includes the following arbitration provision:

> **ARBITRATION OF DISPUTES; TIME LIMIT TO BRING CLAIM**
>
> I **understand** that by agreeing to arbitrate any dispute as set forth in this section, I am waiving my right, and the right(s) of the minor child(ren) above, to maintain a lawsuit against [Sky Zone] and the other Releasees for any and all claims covered by this Agreement. By agreeing to arbitrate, I understand that I will **NOT** have the right to have my claim determined by a jury, and the minor child(ren) above will **NOT** have the right to have claim(s) determined by a jury. Reciprocally, [Sky Zone] and the other Releasees waive their right to maintain a lawsuit against me and the minor child(ren) above for any and all claims covered by this Agreement, and they will not have the right to have their claim(s) determined by a jury. **ANY DISPUTE, CLAIM OR CONTROVERSY ARISING OUT OF**

---

[1] The Agreement is identical to the one at issue in the *Shultz* case.

**OR RELATING TO MY OR THE CHILD'S ACCESS TO AND/OR USE OF THE SKY ZONE PREMISES AND/OR ITS EQUIPMENT, INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL BE BROUGHT WITHIN ONE YEAR OF ITS ACCRUAL (i.e., the date of the alleged injury) AND BE DETERMINED BY ARBITRATION IN THE COUNTY OF THE SKY ZONE FACILITY, PENNSYLVANIA, BEFORE ONE ARBITRATOR. THE ARBITRATION SHALL BE ADMINISTERED BY JAMS[2] PURSUANT TO ITS RULE 16.1 EXPEDITED ARBITRATION RULES AND PROCEDURES. JUDGMENT ON THE AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THIS CLAUSE SHALL NOT PRECLUDE PARTIES FROM SEEKING PROVISIONAL REMEDIES IN AID OF ARBITRATION FROM A COURT OF APPROPRIATE JURISDICTION.** This Agreement shall be governed by, construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania, without regard to choice of law principles. Notwithstanding the provision with respect to the applicable substantive law, any arbitration conducted pursuant to the terms of this Agreement shall be governed by the Federal Arbitration Act (9 U.S.C., Sec. 1-16). I understand and acknowledge that the JAMS Arbitration Rules to which I agree are available online for my review at jamsadr.com, and include JAMS Comprehensive Arbitration Rules & Procedures; Rule 16.1 Expedited Procedures; and, Policy On Consumer Minimum Standards Of Procedural Fairness.

Petition to Compel Arbitration, 1/21/2021, Exhibit B at 3-4 (emphasis in the original). Ms.

Santiago electronically signed the Agreement below the following provision:

By signing below, I represent and warrant that I am the parent, legal guardian, or power-of-attorney of the above listed Child(ren) and have the authority to execute this Agreement on his/her or their behalf and to act on his/her or their behalf. I have read each paragraph in this document and I and they agree to be bound by the terms stated therein, including the release of liability contained therein. I further agree to indemnify and hold harmless the Releasees from any and all claims which are brought by or on behalf of this or these minor Child or Children, or any of them, which are in any way

---

[2] JAMS ("Judicial Arbitration and Mediation Services") is an international private alternative dispute resolution organization.

> connected with, arise out of, or result from their use of the Sky Zone Facility. I am 18 years of age or older. I am entering this agreement on behalf of myself, my spouse or domestic partner, the Child, and our respective and/or collective issue, parents, siblings, heirs, assigns, personal representatives, estate(s), and anyone else who can claim by or through such person or persons (collectively, the "Releasing Parties").

*Id.* at 6. That day, three-year-old Isabella Santiago was injured when an adult entered an area designated for toddlers and jumped on Isabella's trampoline, throwing her off the trampoline and causing a fracture of her knee.

Isabella's father, Samuel Santiago, and Ms. Santiago filed suit individually and on Isabella's behalf seeking to recover damages related to the injuries Isabella suffered at Sky Zone. In reliance on the Agreement, Sky Zone filed a petition seeking to compel arbitration and stay the Santiagos' litigation. The Santiagos opposed the petition, arguing that Ms. Santiago's execution of the Agreement could not bind either Mr. Santiago or Isabella.

Following discovery and supplemental briefing, the trial court determined that the Agreement was enforceable only as to Ms. Santiago, and so it denied Sky Zone's petition.[3] Concerning Isabella, the trial court found that Ms. Santiago could not "legally sign away [Isabella's] right to her future claim for any injuries sustained" while at Sky Zone, and further concluded that the statute of limitations was tolled as to Isabella's claims pursuant to Section 5533 of the Judicial Code. Trial Court Opinion, 6/30/2022, at 4-5.[4] As for Isabella's father, the trial court recognized that one spouse does not have the

---

[3] The Honorable Angelo J. Foglietta presided over the Santiagos' case, while the Honorable Stella M. Tsai presided over the Shultzes' case.

[4] Perhaps in response to the Santiagos' argument, which challenged the enforceability of the Agreement as a whole as to Mr. Santiago and Isabella, the trial court's reasoning for its ruling focused on the enforceability of the Agreement against Mr. Santiago and Isabella, not simply the enforceability of the arbitration clause itself. *See* Trial Court Opinion, 6/30/2022.

authority to act as the agent of the other simply because they are married. *Id.* at 5 (citing *Washburn v. Northern Health Facilities*, 11 A.3d 1008, 1014 (Pa. Super. 2015)). Because Sky Zone put forth no evidence to prove that Mr. Santiago authorized Ms. Santiago to act as his agent, the trial court determined there was no basis upon which to find that Mr. Santiago could be bound to the Agreement. *Id.* at 6. Sky Zone appealed.

In August 2018, Ryan Shultz took his five-year-old son, Rocco, to a Sky Zone location in Philadelphia. That day, Rocco was injured when, contrary to Sky Zone's rules, another patron jumped on the trampoline that Rocco was using. In July 2020, Rocco's mother, Alessandra Shultz, filed a complaint on behalf of Rocco, seeking damages for the injuries he suffered, and in her own right, seeking to recover the costs of his medical care. Sky Zone sought to compel arbitration pursuant to the Agreement and stay the litigation, which Ms. Shultz opposed. The trial court issued a rule to show cause why Sky Zone's petition should be granted and requested the parties to submit briefing in support of their respective positions. Trial Court Order, 5/25/2021.

On January 25, 2022, the trial court denied Sky Zone's petition, finding that Ms. Shultz was not bound by the Agreement because Mr. Shultz was not acting as her agent when he executed it. Like the trial court in the *Santiago* litigation, the *Shultz* trial court recognized that a marriage alone does not create an agency relationship, and it concluded that Sky Zone failed to provide evidence that would allow a finding of agency. Trial Court Opinion, 4/25/2022, at 7. Concerning Rocco's claims, the trial court acknowledged that parents do not have the authority to waive a child's right to file a lawsuit for personal injuries. *Id.* at 9-10.[5] It found that this principle extends to preclude parents from binding a minor to an agreement to arbitrate that requires the minor to waive the right to assert claims in a court of law. *Id.* at 11. In support of this conclusion, the trial

---

[5]  *See also* Trial Court Order, 1/25/2022*.*

court relied on *Troshak v. Terminix International Company, L.P.*, 1998 WL 401693 (E.D. Pa. July 2, 1998) (unpublished decision), wherein the federal district court applied Pennsylvania law to conclude that "[i]f a parent cannot prospectively release the potential claims of a minor child, then a parent does not have authority to bind a minor child to an arbitration provision that requires the minor to waive their right to have potential claims for personal injury in a court of law." Trial Court Opinion, 4/25/2022, at 11. Sky Zone appealed.

### Superior Court Opinion

The Superior Court consolidated the appeals and affirmed the trial courts' rulings as to both the non-signing parents and the minors. The court recognized that whether a valid arbitration agreement exists is governed by "ordinary state-law principles that govern the formation of contracts" tempered with "due regard [for] the federal policy favoring arbitration." *Santiago v. Philly Trampoline Park, LLC*, 291 A.3d 1213, 1220 (Pa. Super. 2023) (quoting *Adams v. Mt. Lebanon Operations, LLC*, 276 A.3d 1203, 1206 (Pa. Super. 2022)). Turning to those principles, the Superior Court explained that a non-signing party may be compelled to arbitrate under an agreement if the signor was acting as an agent of the non-signing party, thereby creating an obligation on the non-signing party. *Id.* (citing *Humphrey v. GlaxoSmithKline PLC*, 263 A.3d 8, 15 (Pa. Super. 2021)). When determining whether there is an agency relationship, the focus is on the actions of the principal, as an agent cannot vest himself with the authority to act for another "simply [] by her own words." *Id.* at 1221. "Critically," the court explained, agency may not be inferred from family ties alone and there must be "facts to determine whether the principal expressly or impliedly intended to create an agency relationship." *Id.*

Applying this standard, the Superior Court rejected Sky Zone's claims that Ms. Santiago and Mr. Shultz were acting as agents of their spouses so as to bind them to the

Agreement. It noted that as to both, Sky Zone's arguments focused on the existence of marital relationships and, more problematically, the actions of the signing parties as purported agents, not the actions of the alleged principals. Concerning the Santiagos, the Superior Court found that Sky Zone produced no evidence that would support the conclusion that Mr. Santiago authorized Ms. Santiago to act as his agent. *Id.* at 1222. Concerning the Shultzes, the court rejected Sky Zone's claim that Ms. Shultz's concession that she presumed Mr. Shultz signed a waiver for their son to play soccer demonstrated that she authorized Mr. Shultz to sign the Agreement on her behalf. *Id.* at 1223.

The Superior Court then generally addressed whether a parent can bind a minor to an arbitration agreement, which it recognized as "the novel question of Pennsylvania law common to both" appeals. *Id.* The court explained that minors act through guardians and that there are two kinds of guardians: "(1) guardian of the person being invested with the care of the person of the minor, and (2) guardian of the estate being entrusted with the control of the property of the minor. The spheres of authority of a guardian of the person and of a guardian of the estate are distinct and mutually exclusive." *Id.* at 1224 (quoting *Rock v. Pyle*, 720 A.2d 137, 141 (Pa. Super. 1998)). The Superior Court clarified that parents are natural guardians of their children, with "intrinsic rights and responsibilities" over their care and custody, but that natural guardianship gives parents no inherent authority over the property of their children. *Id.* at 1225. In other words, "the natural guardian has no … authority to demand or power to receive, hold or manage the minor's property unless the natural guardian has also been appointed as guardian of the minor's estate." *Id.* (quoting *Rock*, 720 A.2d at 141). Once so appointed, a guardian's representation of a minor proceeds under the control and supervision of the court. *Id.* The Superior Court pointed out that a rule of civil procedure requires court approval before

any action involving a minor may be compromised, settled or discontinued. *Id.* (citing Pa.R.C.P. 2039(a)).

The court then turned to the specific arguments before it. Sky Zone focused its argument on the *Shultz* court's reliance on *Troshak* and advocated for "more persuasive non-binding authority" found in *Hojnowski v. Vans Skate Park*, 901 A.3d 381 (N.J. 2006), and *Cross v. Carnes*, 724 N.E.2d 828 (Ohio 1998). Both of those cases, Sky Zone argued, recognize the difference between the release of a minor's potential claims and "a mere agreement to litigate a dispute in a specific forum," whereas *Troshak* did not. *Id.* at 1227. Unconvinced, the Superior Court distinguished the *Cross* and *Hojnowski* cases both on the facts and differences in state law. *See id.* at 1227-28. Of particular importance to the Superior Court's ruling was the role a court plays in litigation brought by a parent on behalf of a child, as it "has the significant effect of transforming the parent's role from that of a natural guardian into, in essence, a court-approved guardian who has authority to make decisions about the minor's estate, not merely the child's person." *Id.* at 1229. Thus, an agreement entered into by a parent on a child's behalf without such court involvement "has none of the legal safeguards attendant to the appointment of a guardian of the minor's estate." *Id.* "Consequently," in these cases, "the parents in their pre-litigation state of natural guardianship lacked any authority to manage the estate of their minor children." *Id.*

Sky Zone sought allowance of appeal with this Court, which we granted to review the Superior Court's conclusions that neither the non-signing parents nor the minor children were bound by the arbitration provision of the Agreement. *Santiago v. Philly Trampoline Park, LLC*, 304 A.3d 330 (Pa. 2023) (per curiam); *Shultz v. Sky Zone, LLC*, 304 A.3d 331 (Pa. 2023) (per curiam).

## I. Existence of an Agency Relationship Between Spouses

We begin with the Superior Court's determination that the arbitration agreement is not enforceable against Mr. Santiago and Ms. Shultz ("Non-signatory Parents") because their respective spouses were not acting as their agents when they signed the Agreement. This is a question of law, over which our standard of review is de novo and the scope of review is plenary. *See Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa. Super. 2012).

### Parties' Arguments

Sky Zone does not dispute that it was required to establish an agency relationship between spouses for the Non-signatory Parents to be bound by the Agreement; Sky Zone only disputes the Superior Court's conclusion that it did not establish such relationships. With regard to the Shultzes, Sky Zone argues that Mr. and Ms. Shultz were married when he executed the Agreement and points to Ms. Shultz's testimony that she assumed that, on a previous instance, Mr. Shultz signed a waiver on her behalf so that Rocco could play soccer. Sky Zone's Brief, 25 EAP 2023, at 36-37. To Sky Zone, "[t]his testimony demonstrates that [Ms. Shultz], through her prior conduct, bestowed upon [Mr. Shultz] implied authority to enter into participation agreements relating to recreational activities[.]" *Id.* at 38. Sky Zone believes that it also proved apparent authority, citing the lack of any evidence that Ms. Shultz told Rocco's father not to take him to trampoline parks, as well as Rocco's previous visit to the same Sky Zone location. It argues, "[Rocco's] continued visit to the facility led [Sky Zone's] employees to reasonably believe that [Mr. Shultz] had the authority to sign the [Agreement] on [Ms. Shultz's] behalf." *Id.* at 39. Furthermore, Sky Zone argues, the theory of agency by estoppel applies because Mr. Shultz signed the waiver in February 2018 and the injury did not occur until a subsequent visit in August of the same year, but there is no evidence that Ms. Shultz took any action in the intervening months "to disavow [Sky Zone] of its belief that [Rocco] was permitted to

participate in activities at the facility and, in so doing, was subject to the terms of the … Agreement, which included the arbitration provision."  *Id.* at 40.

Sky Zone makes the same arguments regarding the Santiagos, finding evidence of implied authority in the fact that Mr. and Ms. Santiago were married at the time she executed the Agreement and Mr. Santiago's testimony that Ms. Santiago did not need his permission to take Isabella to Sky Zone, nor did he ever tell Ms. Santiago that she could not take Isabella to Sky Zone.  Sky Zone's Brief, 24 EAP 2023, at 35-37.  Sky Zone finds evidence establishing apparent authority in the fact that Mr. Santiago "did not testify that he did anything to make [Sky Zone] aware that [Ms. Santiago] was acting without authority when she signed the Agreement on his behalf."  *Id.* at 38.

In response, the appellees collectively emphasize that arbitration agreements are subject to strict construction and that marriage alone does not establish that one spouse has the power to act as the agent for the other.  *See* Shultzes' Brief at 31-33; Santiagos' Brief at 18-19.  The Shultzes dispute that the evidence cited by Sky Zone establishes that Mr. Shultz was acting as the agent of Ms. Shultz and point to other snippets of Ms. Shultz's testimony in support of their position.  *See* Shultzes' Brief at 33-35.

### Discussion

This Commonwealth favors the settlement of disputes by arbitration as a matter of public policy, as it offers a means to a swift and easy disposition of claims.  *Fastuca v. L.W. Molnar & Assocs.*, 10 A.3d 1230, 1245 (Pa. 2011); *Emporium Area Joint Sch. Auth. v. Anundson Const. & Bldg. Supply Co.*, 166 A.2d 269, 270 (Pa. 1960).  Despite this partiality, arbitration agreements are strictly construed and may not be extended by implication, either as to the persons subject thereto or the claims to be arbitrated. *Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926, 927 (Pa. 1964).  The parties' intent to arbitrate must be clear, for "[t]he terms of the agreement are not to be strained to discover it.  They

must be clear and unmistakable to oust the jurisdiction of the courts, for trial by jury cannot be taken away by implication, merely, in any case." *Jacob v. Weisser*, 56 A. 1065, 1067 (Pa. 1904).

A party seeking to compel arbitration must satisfy a two-part test: first, the party must prove that a valid arbitration agreement exists, and second, that the dispute falls within the scope of the agreement. *Elwyn*, 48 A.3d at 461. To determine whether a valid agreement to arbitrate exists, courts apply state law principles of contract law. *Humphrey*, 263 A.3d at 13. Consistent with these principles, in most instances, only the parties to an arbitration agreement are bound to its terms. *See, e.g, Elwyn*, 48 A.3d at 461. In some situations, however, courts will find that someone not a party to the agreement is nonetheless bound thereto; most commonly, these involve theories of third-party beneficiary, agency, or equitable estoppel. *See Humphrey*, 263 A.3d at 15; *Smay v. E.R. Stuebner, Inc.,* 864 A.2d 1266, 1271 (Pa. Super. 2004); *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 294 (3d Cir. 2004). Sky Zone has argued an agency theory to bind the Non-signatory Parents to the arbitration provision.

Agency is a longstanding legal construct. At least as early as the mid-nineteenth century, Pennsylvania law recognized an agent as "one who acts in the place and stead of another." *Commonwealth v. Britton*, 229 A.3d 590, 597-98 (Pa. 2020) (quoting *Valentine v. Packer*, 5 Pa. 333, 334 (1847)). "Agency will not be assumed from the mere fact that one does an act for another[;]" rather, "[t]he fact of agency must be established." *Reifsnyder v. Dougherty*, 152 A. 98, 100 (Pa. 1930). In broad terms, we have explained that "[s]ome legal connection must appear from which the alleged principal could not escape the conclusion of delegated authority or agency." *Id.* In more detailed terms, this Court has provided that agency is established where there is "manifestation by the principal that the agent shall act for him[;] the agent's acceptance of the undertaking[;]

and the understanding of the parties that the principal is to be in control of the undertaking." *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000) (quoting *Scott v. Purcell*, 415 A.2d 56, 60 (Pa. 1980)).  Unmistakably, the focus is on the intention of the principal to have the agent act on his or her behalf, for "[a]n agent cannot, simply by his own words, invest himself with apparent authority. Such authority emanates from the action of the principal and not the agent."  *Turnway Corp. v. Soffer*, 336 A.2d 871, 876 (Pa. 1975).  The party seeking to assert an agency relationship bears the burden of proving its existence.  *Basile*, 761 A.2d at 1120.

Agency may be established by express authority, implied authority, apparent authority, and authority by estoppel.  *Reifsnyder*, 152 A. at 100.  When a principal "deliberately and specifically grants authority to the agent as to certain matters[,]" agency by express authority results.  *Washburn v. N. Health Facilities, Inc.*, 121 A.3d 1008, 1012 (Pa. Super. 2015).  Implied authority is found where an agent's actions are necessary to carry out agency by express authority, and apparent authority "exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act."  *Id.*  Conversely, authority by estoppel results when a principal "fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal."  *Id.*

As described above, Sky Zone argues that the evidence supports findings of implied and apparent agency as to both families.  Concerning the Santiagos, Sky Zone highlights that Ms. and Mr. Santiago were married at the time of the incident and that the Agreement contained a provision stating that its terms applied not only to her, but "her spouse or domestic partner" as well.  Sky Zone's Brief, 24 EAP 2023, at 35-36.  In support of a finding of implied authority, Sky Zone draws our attention to Ms. Santiago's testimony that she did not need Mr. Santiago's permission to take their daughter to Sky Zone.  *Id.*

at 36. In equal measure, Sky Zone relies on Mr. Santiago's testimony that he did not know Ms. Santiago took their child to its facility on the date in question and that he did not tell Ms. Santiago that she could not take their child there. *Id.* at 36-37. Sky Zone insists that the sum of this testimony "demonstrates that [Mr. Santiago], through his prior conduct, bestowed upon [Ms. Santiago] implied authority to take [Isabella] to participate in recreational activities and, in so doing, allowed [her] to take the steps necessary to facilitate such participation, which in this case included signing the Agreement." *Id.* at 37. This argument misunderstands the nature of agency by implication. Authority is implied, for agency purposes, when it is needed to allow an agent to act on a grant of express authority. *Washburn*, 121 A.3d at 1012. Sky Zone makes no argument for express authority, nor could it, as there is no evidence that Mr. Santiago "deliberately and specifically" authorized Ms. Santiago to take their child to Sky Zone. *See id.* Therefore, there can be no finding of implied authority to sign the Agreement on his behalf.

As for apparent authority, Sky Zone argues that Mr. Santiago's "testimony and pre-suit conduct" prove that it was reasonable for its employees to believe that Mr. Santiago authorized Ms. Santiago to sign the Agreement on his behalf. Sky Zone's Brief, 24 EAP 2023, at 37. Curiously, Sky Zone points only to omissions in Mr. Santiago's testimony in support of its claim, arguing that Mr. Santiago "did not testify that he did anything to make [Sky Zone] aware that [Ms. Santiago] was acting without authority when she signed the Agreement on his behalf." *Id.* at 37-38. Thus, Sky Zone argues, it was reasonable for its employees to believe that Ms. Santiago could bind Mr. Santiago to the Agreement as his agent. *Id.*

As stated above, apparent authority "exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act." *Washburn*, 121 A.3d at 1012. We are at a loss

as to how Mr. Santiago's failure to act could be construed as conduct that caused Sky Zone employees to reasonably believe that he authorized Ms. Santiago to act on his behalf. Moreover, as Sky Zone pointed out in connection with its previous argument, Mr. Santiago testified that he did not know that Ms. Santiago was taking their child to Sky Zone. One wonders how Mr. Santiago could be expected to inform Sky Zone that Ms. Santiago was acting without his authority if he did not know that she was going there.

With regard to Sky Zone's emphasis on the Santiagos' marital status, more than eighty years ago, this Court declared it "well settled" that "the relationship of principal and agent does not arise from the marital relationship[.]" *Sidle v. Kaufman*, 29 A.2d 77, 81 (Pa. 1942). That is not to say that a marital relationship has no part in an agency inquiry; rather, the marital relationship, when considered along with "conditions, acts, or conduct clearly implying an agency[,]" may give rise to a finding of an agency relationship. *Id.* This is because a martial relationship "is of such a nature … that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of husband or wife. Thus, a husband habitually permitted by his wife to attend to some of her business matters may be found to have authority to transact all her business affairs." *Id.*

Sky Zone contends that while there is no "marital agency," the existence of a marital relationship could tip the scales in favor of finding agency where the same circumstances between strangers would not. *See* Sky Zone's Brief, 24 EAP 2023, at 35. Certainly, this is true. *See, e.g., Sidle*, 29 A.2d at 81. Here, however, Sky Zone makes no effort to tie the Santiagos' marital relationship to other conditions, acts, or conduct so as to permit a finding of agency where one would otherwise not be found. To the contrary, it simply points to the fact of their marriage and the portion of the Agreement that provides

that it applies not only to Ms. Santiago, but her spouse, as well. Sky Zone's Brief, 24 EAP 2023, at 35-36.

Sky Zone makes similar arguments regarding the Shultzes; pointing to the fact of their marriage and aspects of testimony that it believes establish implied and apparent agency. It argues that implied agency exists because "through her prior conduct," Ms. Shultz "bestowed upon [Mr. Shultz] implied authority to enter into participation agreements relating to recreational activities in which [Rocco] participated." Sky Zone's Brief, 25 EAP 2023, at 38. This argument is built on Ms. Shultz's testimony that she assumed that Mr. Shultz signed a participation agreement for their son to participate in a soccer program. *Id.* at 37. We reiterate that implied authority exists in connection with express authority; it is a legal fiction that extends a grant of agency to allow the agent to perform what is necessary to fulfill the tasks for which they have been granted express authority. *Washburn*, 121 A.3d at 1012. There is no evidence that Ms. Shultz ever expressly authorized Mr. Shultz to take their child to Sky Zone, so Sky Zone's attempt to fabricate an on-going express agency for such a purpose fails for a lack of factual support.

To prove apparent authority, Sky Zone agues that although Ms. Shultz testified that she did not want Mr. Shultz to take their son to trampoline parks, "she did not testify that she did anything to make [Sky Zone] aware of this prohibition." Sky Zone's Brief, 25 EAP 2023, at 39. Mirroring the argument it made for Mr. Santiago, Sky Zone argues that Ms. Shultz's failure to take such action "led [Sky Zone's] employees to reasonably believe that [Mr. Shultz] had authority to bring [Rocco] to the facility and, in so doing, had the authority to sign the [Agreement] on [her] behalf." *Id.* A failure to act does not establish that Ms. Shultz, as the principal, "by word or conduct, cause[d] people with whom the alleged agent deal[t] to believe that the principal has granted the agent authority to act." *Washburn*, 121 A.3d at 1012. There is no evidence that Sky Zone's employees knew

that Ms. Shultz existed, much less that she authorized Mr. Shultz to sign the Agreement on her behalf.

Sky Zone also argues that Ms. Shultz should be estopped from claiming that Mr. Shultz did not have the authority to bind her to the Agreement because between the time Mr. Shultz signed the agreement in February 2018 and when the injury occurred in August 2018, Ms. Shultz never "took any steps to disavow [Sky Zone] of its belief that [Rocco] was permitted to participate in activities at the facility[.]" Sky Zone's Brief, 25 EAP 2023, at 41. This, too, is a misplaced argument. Agency by estoppel results when a principal "fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal." *Washburn*, 121 A.3d at 1012. The Agreement does not indicate that Mr. Shultz claimed that he had this authority to bind Ms. Shultz. Sky Zone's failure to establish that Sky Zone employees could have had a reasonable belief that Ms. Shultz authorized Mr. Shultz to sign the Agreement on her behalf defeats the possibility of agency by estoppel. Sky Zone cannot demand that Ms. Shultz was required to take action to disavow an agency relationship that it has not established.

Pennsylvania law on agency is clear; this is something that Sky Zone does not contest. Sky Zone's challenges reduce to disputes over the lower courts' determinations that it failed to meet its evidentiary burden, as defined by our well-settled law, to prove that one spouse gave the other the authority to sign the Agreement on their behalf, thereby binding them to its terms. The Superior Court properly applied the law to find that neither of the signatory parents was acting as an agent of their spouse when they signed the Agreement. Because we find no error in the Superior Court's determinations, we do not disturb them.

## II. Enforceability of Arbitration Provision as to the Claims of the Minors

The remaining issue asks whether, as a matter of law, an arbitration agreement signed by a parent can be enforced as to the claims of the minor child. *See Santiago v. Philly Trampoline Park, LLC*, 304 A.3d 330 (Pa. 2023) (per curiam); *Shultz v. Sky Zone*, 304 A.3d 331 (Pa. 2023) (per curiam).

### Parties' Arguments

Sky Zone urges us to answer this question affirmatively. It argues that the Superior Court here was led astray by its failure to recognize the arbitration provision's limited purpose as a forum selection clause. With that limitation in mind, Sky Zone argues that the Superior Court's reliance on the *Troshak* case was erroneous and advocates for the approach followed in the *Hojnowski* and *Cross* cases, which held that while minors have a substantive right to recovery for personal injury, there is no substantive right to pursue that claim in a court of law. Sky Zone's Brief, 24 EAP 2023, at 20-24.[6]

Sky Zone rejects the notion that enforcement of the arbitration agreement would violate this Commonwealth's policy of protecting minor litigants because it "cannot conjure any reason why a neutral arbitrator [would] be unable to afford minors … with the same protections [that] would be afforded to them in a court of law." *Id.* at 26-27. To the contrary, Sky Zone contends that the Superior Court's decision violates public policy in favor of arbitration agreements by effectively exempting from arbitration all claims by minors. *Id.* at 28. It warns that the Superior Court's ruling will harm businesses like Sky Zone, that offer recreational activities that carry "an inherent risk of potential harm to patrons[,]" including skiing, ziplining, water parks and amusement parks because it would not allow such businesses to limit their liability through the use of waivers that include

---

[6] Sky Zone indicates that its position is consistent with "the vast majority" of jurisdictions that have considered this issue, although thirty-seven states "have yet to directly rule upon this issue." Sky Zone's Brief, 24 EAP 2023, at 20.

exculpatory provisions. *Id.* at 28-29 (citing *Milshteyn v. Fitness Int'l, Inc.*, 271 A.3d 498 (Pa. Super. 2002); *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174 (Pa. Super. 2010); *McDonald v. Whitewater Challengers Inc.*, 116 A.3d 99 (Pa. Super. 2015)). Refusing to enforce the arbitration agreement against minors, Sky Zone argues, "leaves businesses offering recreational activities to minors in Pennsylvania with essentially no ability to create a limited degree of control over future potential litigation by selecting a forum for the litigation (i.e., binding arbitration) which has a history of providing a cost-effective and timely adjudication of parties' rights." *Id.* at 29-30. Absent a mechanism to limit liability, Sky Zone portends that it will be economically unfeasible for businesses like it to operate in Pennsylvania. *Id.* at 30.[7]

The appellees unanimously disagree with Sky Zone's characterization of the arbitration provision as merely a forum selection clause. The Shultzes emphasize that the Agreement embeds a provision that shortens the statute of limitations within the arbitration provision and also contains a prospective release of all claims.[8] Therefore, "[i]f

---

[7] Beyond these public policy concerns, Sky Zone argues that the Superior Court's decision violates parents' constitutional right to make decisions regarding their children. Sky Zone's Brief, 24 EAP 2023, at 32 (citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000)). The Santiagos urge us to find this issue waived because Sky Zone is attempting to raise this claim of constitutional violation for the first time before this Court. Santiagos' Brief at 29.

Our review of the record comports with the Santiagos' representation, and Sky Zone does not identify where in the record it preserved this issue for appeal. *See* Pa.R.A.P. 2117(c) (requiring appellate briefs to indicate where and how the issue was raised and preserved in the lower court). We therefore conclude that Sky Zone has waived this claim for purposes of appeal. Pa.R.A.P. 302(a).

[8] In addition to the arbitration provision set forth above, the Agreement contains the following provision:

**Release of Liability**

> The Releasing Parties hereby forever, irrevocably and
> unconditionally release, relinquish, discharge from liability and

(continued…)

enforced," the arbitration provision would "limit, release and extinguish the right of the minor … well before reaching the age of majority" and without court oversight and approval, contrary to the law in this Commonwealth. *Id.* at 16-17. Precisely because the Agreement combines all of these provisions and effectively reduces to a release of prospective claims, they argue that *Troshak* is instructive and it was appropriate for the trial court and Superior Court to be guided by its reasoning. *Id.* at 18-19.

covenant not to sue [Sky Zone], and their successors, predecessors-in-interest, and insurers (collectively, the "Releasees") from any and all claims, demands, rights, actions, suits, causes of action, obligations, debts, costs, losses, charges, expenses, attorneys' fees, damages, judgments and liabilities, of whatever kind and nature, in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden related to or arising directly or indirectly, from my or Child's access to and/or use of the Sky Zone Facility, premises and/or its equipment (whether trampolines or otherwise), the Child's and/or my entry into the Sky Zone Facility, the condition, maintenance, inspection, supervision, control or security of the Sky Zone Facility, the failure to warn of dangerous conditions in connection with the Sky Zone Facility, and/or the acts or omissions of [Sky Zone] or any of the Releasees, including, without limitation, any claim for negligence, failure to warn or other omission, property damage, personal injury, emotional injury, illness, bodily harm, paralysis or death. I understand that this release and waiver applies not only to use of the trampolines, but also all other equipment, and all activities and games at the Sky Zone Facility. I understand that this release and waiver applies to and includes all activities that I or my Child engage in at the premises, whether inside or outside the Sky Zone facility. In the event that any claim released herein is brought by or asserted on behalf of, the Releasing Parties, I shall immediately defend, indemnify and hold harmless the Releasees, and any of the, from any loss or liability, including reasonable attorneys' fees, associated therewith or arising therefrom.

Petition to Compel Arbitration, 1/21/2021, Exhibit B at 3.

The Shultzes dismiss Sky Zone's reliance on case law from other jurisdictions as unnecessary because the Superior Court applied "the existing framework of Pennsylvania law" to reach its conclusion. *Id.* at 21-22 (discussing *Rock*, 720 A.2d at 141; *Rehrer*, 91 A.3d at 193; *Tri-State Asphalt Corp.*, 875 A.2d at 1202). With respect to Sky Zone's favored cases, the Shultzes believe that the Superior Court was right to distinguish both *Hojnowski* and *Cross* because those cases turned on law particular to those states and conclusions that the minor was a third-party beneficiary to the agreement containing the arbitration provision, a theory not advanced by Sky Zone. *Id.* at 24-25.

The Shultzes find Sky Zone's public policy arguments shortsighted, emphasizing that a trial court's involvement in a minor's litigation involves more than approval of potential settlements, as the trial court is vested with "control and supervision" over the entirety of the case to ensure that the litigation is in the minor's best interest. *Id.* at 26 (citing *Rehrer*, 91 A.3d at 193). They also stress that a cause of action is an inviolate property right that would be forfeited by enforcement of this arbitration agreement. *Id.* at 27 (citing 42 Pa.C.S. § 5104(a)).[9] The Shultzes disagree that invalidating the arbitration agreement as to minors would have a negative impact on businesses. Instead, "the standard of care required … for the safety of the minor patron remains the same. The cost to operate the facility in question does not change and the forum in which a case is presented should have no bearing on the care used by the facility." *Id.* at 28-29. Similarly, the Shultzes contend that there is no evidence that arbitration is significantly less expensive than proceeding through the court system, thereby contesting Sky Zone's position that nullifying the arbitration provision as to minors robs Sky Zone of its ability to exert a limited degree of control over potential future litigation by selecting a forum. *Id.*

---

[9] "Except where the right to trial by jury is enlarged by statute, trial by jury shall be as heretofore, and the right thereof shall remain inviolate. Trial by jury may be waived in the manner prescribed by general rules." 42 Pa.C.S. § 5104(a).

Like the Shultzes, the Santiagos emphasize that the arbitration provision is but one part of the Agreement. Santiagos' Brief at 21. They argue that "[b]y operation, the [A]greement works as a release of a minor's claim, thereby improperly circumventing and superseding the well-established role and power of the Court to review and approve any settlement and release of a minor's claim." *Id.* at 22. The Santiagos call the Agreement "a legal sleight of hand in which the possibility of recovering damages … through arbitration is only illusory." *Id.* at 26. They respond to Sky Zone's claim that it needs arbitration agreements to limit economic exposure as "an exquisite disclosure of [its] true financial motivations." *Id.* at 28. Public policy should focus on the consequence to potential "victims" if the arbitration provision is enforced, not, in the Santiagos' view, on the impact on a business' operating expenses or viability. *Id.*

Where Sky Zone points to decisions from other jurisdictions that support the enforceability of arbitration provisions against a minor, the Santiagos draw our attention to a case from the Supreme Court of Louisiana that declared a Sky Zone arbitration provision adhesionary and therefore unenforceable. *Id.* at 23-24 (discussing *Duhon v. Activelaf, LLC*, __ So.3d __, 2016 WL 6123820 (La. 2016)).

**Discussion**

Certain principles are relevant to our resolution of this issue. The first deal with the status of minors under the law. Minors are not "sui juris," a Latin phrase meaning "of one's own right" or "[o]f full age and capacity." *Sui Juris*, BLACK'S LAW DICTIONARY (12th ed. 2024). Simply by virtue of their age, minors are viewed as having a "distinct legal disability." *Nicole B. v. Sch. Dist. of Phila.*, 237 A.3d 986, 993 (Pa. 2020). As we have explained, "In order that a minor, without experience and unaccustomed to business transactions, may not be deceived and imposed upon, the law has thrown around him a disability." *Brill v. Brill*, 127 A. 840, 843 (Pa. 1925). Because they are not sui juris, minors

are incompetent to contract, except for necessities such as food and clothing. *In re O'Leary's Est.*, 42 A.2d 624, 625 (Pa. 1945). Minors also are prohibited from bringing a cause of action in their own right before reaching the age of majority. *Nicole B.*, 237 A.3d at 993. "The underlying rationale of [this] minority tolling is not to deprive minors of their rights, but to safeguard those rights during a period in which minors are viewed as being immature, inexperienced, and unable to independently protect them[selves]." *Id.*

In recognition of their legal disability, minors are protected through a series of rules of civil procedure that govern actions where a minor is a party. *See* Pa.R.C.P. 2026-2049. These rules establish a framework that ensures the litigation is serving the minor's interests. For instance, Rule 2027 mandates that "[w]hen a party to an action, a minor shall be represented by a guardian who shall supervise and control the conduct of the action in behalf of the minor." Pa.R.C.P. 2027.[10] This guardian "derives no benefit from serving in that capacity" but rather is simply "one by whom a suit is brought or defended in behalf of another." *Bertinelli v. Galoni*, 200 A. 58, 59 (Pa. 1938). While a minor "may select a guardian," that selection is subject to the court's continuing authority to remove the guardian if it determines that cause for removal exists. Pa.R.C.P. 2031(a), 2033; *see also Bertinelli*, 200 A. at 59 (providing that acts of guardian representing a minor "are always subject to the control and supervision of the court, which has the right in each case to determine whether the litigation is in the [minor's] best interests"). The court must approve any settlement, compromise or discontinuance of an action in which a minor is a party. Pa.R.C.P. 2039(a). Taken together, the rules assure that a minor's best interests

---

[10] "Guardian," for purposes of the rules governing actions with a minor as a party, is defined as "the party representing the interest of a minor party in any action, whether as (a) the guardian of a minor appointed by any court of competent jurisdiction, (b) a person in the nature of a next friend selected to represent a minor plaintiff in an action, or (c) a guardian ad litem specially appointed by the court in which the action is pending[.]" Pa.R.C.P. 2026.

are pursued and that the court has continuing supervision over the action. *See, e.g., Storms ex rel. Storms v. O'Malley*, 779 A.2d 548, 556 (Pa. Super. 2001), *appeal denied*, 806 A.2d 862 (Pa. 2002) (explaining Rule 2039(a)'s "primary purpose is to prevent settlements which are unfair to minors, and to ensure that the minor receive the benefit of the money awarded"). This promotes this Commonwealth's long-standing policy of protecting minors until they emerge from their "legal disability." *O'Leary's Est.*, 42 A.2d at 625 ("All lawyers know that the protection of infants is one of the chief concerns of the law.").

Other relevant principles relate to the role of a minor's guardian. A guardian is "invested with the power, and charged with the duty, of taking care of the person and/or managing the property rights of another person[.]" *In re Stapas*, 820 A.2d 850, 857 (Pa. Commw. 2003). The law recognizes two categories of guardians: guardians of the person, who are "invested with the care of the person of the minor[,]" and guardians of the estate, who are "entrusted with the control of the property of the minor." *Id.* These are "distinct and mutually exclusive" spheres of authority. *Id.* Accordingly, parents, who are recognized as natural guardians with rights to the care and custody of their minor children, have "no authority whatever to exercise any control over the estate of the minor." *Brill*, 127 A. at 843; *see also In re Schulz' Est.*, 98 A.2d 176, 179 (Pa. 1953) ("A parent has no authority to sell and convey the interest of a minor child in real or personal property.") (citing *Senser v. Bower,* 1 Pen. & W. 450 (Pa. 1830)). Bluntly, "[n]atural guardianship confers no right to intermeddle with the property of the infant, but is a mere personal right … to the custody" of the minor. *Brill*, 127 A. 843. Guardians of the estate, in contrast, serve to affect a minor's estate and property in a manner that serves the best interests of the minor. Guardians ad litem are guardians of the estate appointed by a court to represent a minor in particular litigation. *In re Kenna's Est.*, 34 A.2d 617, 619

(Pa. 1943). They are "in a special sense representatives of the court" whose "function is to represent and protect" a minor's interests. *Id.* The powers and duties of a guardian ad litem are defined by statute, calibrated to ensure that the guardian identifies and pursues the minor's interests. *See* 42 Pa.C.S. § 6311. A parent may be a guardian of their child's estate for purposes of litigation if a court appoints the parent to be the guardian ad litem.

Finally, we recognize that there is a vested property right in an accrued cause of action. *Ieropoli v. AC&S Corp.*, 842 A.2d 919, 930 (Pa. 2004*); Lewis v. Pennsylvania R. Co.,* 69 A. 821, 823 (Pa. 1908). When a minor is injured, the parents and the minor have separate actionable claims; the parents have a claim for medical expenses and the loss of the minor's services, and the minor has claims for pain and suffering and for losses after minority. *Dellacasse v. Floyd*, 2 A.2d 860, 862 n.1 (Pa. 1938).

Sky Zone does not disagree with these principles. It makes no suggestion that minors are not entitled to the law's protective measures or that minors themselves can make a binding election to submit their claims to arbitration. Rather, it argues that the Agreement's arbitration provision is merely a forum selection clause that does not impact a minor's substantive rights in a cause of action. We disagree. An agreement to submit a claim to arbitration forfeits the right to have that claim adjudicated in court. *See Nat'l Grange Mut. Ins. Co. v. Kuhn,* 236 A.2d 758, 760–61 (Pa. 1968) (holding that an arbitration clause "indicates that the parties contemplated one method, and one method only, for the resolution of disputes" and, therefore, refusing to interpret that agreement as permitting court proceedings); *cf. Bucks Orthopaedic Surgery Assocs., P.C. v. Ruth*, 925 A.2d 868, 873 (Pa. Super. 2007) ("[W]hen there is no express agreement to arbitrate, then a party has not waived his right to a judicial forum."). As stated above, a parent has no inherent authority, by virtue of the status of natural guardian alone and without the "sanction of some tribunal," to exercise power over a minor child's property, which

includes a cause of action. *Brill*, 127 A. at 843. Because an agreement to arbitrate forfeits the minor's right to have a claim adjudicated in court, it is an unsanctioned exercise of power over the minor's property by a natural guardian, and therefore unenforceable.

Sky Zone's argument is faulty for another reason. "[A]n arbitration agreement is 'a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) (quoting *Sckerk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)). Contrary to Sky Zone's position, the effect of the arbitration provision is not limited to forum selection; it also determines the procedure that will be applied to resolve the disputes submitted to arbitration. This is fatal to Sky Zone's claim because arbitration lacks the carefully constructed network of protections for the interests of the minor outlined above. If the minors' claims were submitted to arbitration, there would be no appointment of a guardian or judicial oversight to guarantee the pursuit of their best interests. Removal of these safeguards fundamentally changes the minors' rights in their causes of action and thwarts their protection, which this Court has recognized as "one of the chief concerns of the law." *O'Leary's Est.*, 42 A.2d at 625.[11]

The *Cross* and *Hojnowski* cases, the foundations of Sky Zone's argument, do not persuade us otherwise. *Cross* involved an arbitration agreement in a release that an Ohio mother signed so that her minor daughter (collectively "appellants") could appear on the Sally Jessy Raphael show in New York. Apparently, the appellants did not know that the

---

[11] The arbitration provision at issue in these appeals states that arbitration will be "administered by JAMS pursuant to its Rule 16.1 expedited arbitration rules and procedures." Petition to Compel Arbitration, 1/21/2021, Exhibit B at 3-4. Neither JAMS Rule 16.1 nor any other of its rules and procedures provides for the appointment of a guardian for a minor party or court supervision over the proceedings. *See* JAMS Comprehensive Arbitration Rules and Procedures Rule 16.1, https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-16-1 (last visited June 18, 2025).

theme of the show was "Teen Girl Bullies" and that the daughter was going to be portrayed as a bully. Their complaint filed in an Ohio state court raised claims of defamation, fraud, and fraudulent concealment. Sally Jessy Raphael and her production company moved to stay the proceedings pending arbitration and the trial court granted their motion. As Sky Zone reports, the Ohio Court of Appeals upheld the trial court's determination that the mother bound her daughter to the arbitration agreement. *Cross*, 724 N.E.2d at 836. However, it provided no reasoning for this conclusion that would aid Sky Zone before this Court. The court simply recognized that no Ohio case was "directly on point," identified two cases from other jurisdictions cited by the appellees in support of their position, and stated without elaboration that it "f[ound] th[ose] cases persuasive in light of Ohio's policy favoring the settlement of disputes through arbitration." *Id.* The court also noted that the Ohio Supreme Court recently determined that a parent could bind a child to a release of claims and suggested (again without elaboration) that this determination supported its decision. *Id.* (citing *Zivich v. Montor Soccer Club, Inc.*, 696 N.E.2d 201 (Ohio 1998)).[12] Citing these considerations, the appeals court reasoned that "the parent's consent and release to arbitration "only specifies the forum for resolution of the child's claim; it does not extinguish the claim." *Id.* There is no indication in *Cross* that Ohio has a policy of protecting minors when they assert a claim, much less a system of safeguards to protect minors as parties before a court.[13] *Cross* announces a holding in line with Sky Zone's position, but no reasoning in support of it.

---

[12] Sky Zone has argued forcefully that releases and arbitration clauses cannot be treated alike, yet we observe that one of the principal cases upon which it relies takes a contrary approach. *See Cross*, 724 N.E.2d at 836.

[13] The Ohio Rules of Civil Procedure lack rules specific to actions in which a minor is a party. Pursuant to its Rule 17 ("Parties plaintiff and defendant; capacity"), Ohio courts are required to appoint a guardian ad litem or "make such other order as it deems proper for the protection" of an unrepresented minor. Ohio Civ.R. 17(B). There are no rules (continued…)

The *Hojnowski* case suffers from a similar fault. While the Supreme Court of New Jersey concludes that an agreement to arbitrate does not impact a minor's substantive rights but merely specifies the forum "in which those rights are vindicated[,]" *Hojnowski*, 901 A.2d at 392, it does so without discussing the "considerable protections to claims of minor children" that New Jersey's courts have "historically" afforded. *Id.* at 387. The *Hojnowski* court acknowledges that such protections exist, but mentions them only in connection with separate issue in the case: whether a parent can release or compromise a minor's pre-injury tort claim. Even then, the only protective measure it discusses is a rule that prohibits a parent from releasing or settling a minor's claim without statutory or judicial approval. *Id.*[14]

---

providing for continuing judicial oversight analogous to our Rules of Civil Procedure 2026 through 2049.

[14] While Sky Zone relies on the portion of *Hojnowski* addressing the arbitration provision, *Hojnowski* is diametrically opposed to Sky Zone's position regarding the validity of a release of claims by a parent on behalf of a minor child. Sky Zone invites this Court to pick and choose among the holdings of the cases upon which it relies, *see* supra note 6, advocating for the narrowest reading that serves it purposes.

Both the *Shultz* trial court and the Superior Court relied on *Troshak*, 1998 WL 401693, at *5, to resolve this issue. *Troshak* involved a contract for termite control services to be performed at the Troshak residence. The contract, signed only by Mr. Troshak, contained an arbitration clause. When Mr. Troshak, his wife and minor son filed suit alleging property damage and personal injury as a result of the termite control services, Terminix sought to enforce the arbitration agreement as to all three plaintiffs. This brought before the court the question of the enforceability of the arbitration agreement as to Ms. Troshak and the minor child.

To resolve the question, the *Troshak* court turned to *Apicella v. Valley Forge Military Academy*, 630 F.Supp. 20, 23 (E.D.Pa. 1985), and *Simmons by Grinnel v. Parkette National Gymnastics Training Center*, 670 F.Supp. 140 (E.D.Pa. 1987), two decisions that held that the parent-child relationship alone does not vest a parent with the authority to release their child's claims or potential future claims. *See Simmons,* 670 F.Supp. at 143; *Apicella*, 630 F.Supp. at 24. The *Troshak* court extended that holding to the question before it. It reasoned, "If a parent cannot prospectively release the potential claims of a minor child, then a parent does not have authority to bind a minor child to an arbitration (continued…)

In short, the cases upon which Sky Zone relies lack consideration of any protections for minors, which are a chief concern of our law. *O'Leary's Est.*, 42 A.2d at 625. We cannot ignore that submitting a claim to arbitration is not merely forum selection, but the selection of a forum devoid of judicial protection of the minor's interests. We reiterate that under the law of our Commonwealth, minors are deemed to labor under a disability, which includes lacking the ability to make reasoned decisions regarding their property. Our Rules of Civil Procedure are constructed to recognize that disability and ameliorate the consequences of that status when claims are brought implicating a cause of action vested in a minor. As a predicate, a cause of action cannot be advanced by a minor on their own behalf, *see* Pa.R.C.P. 2027, and, critically, the court at all times has the obligation to monitor the conduct of the litigation to protect the child's best interests. Pa.R.C.P. 2031, 2039. Arbitration strips the minor of these protections and a parent, as a natural guardian, has no authority to agree to a private adjudication of a minor child's legal interest. Submitting a claim to arbitration deprives a minor of these protective procedural measures.[15]

_____

provision that requires the minor to waive their right to have potential claims for personal injury filed in a court of law." *Troshak*, 1998 WL 401693, at *5.

*Troshak* is consistent with our decision here in that it concludes that a parent cannot bind a minor child to an arbitration clause. While the *Troshak* court focused on interference with the child's rights to potential causes of action, our decision focuses on the deprivation of the judicial protections for minors that would result if minors were bound to agreements to arbitrate.

[15] We recognize the aspect of appellees' argument that the arbitration provision is invalid because embedded within its terms is language requiring that all claims must be brought within one year of the date of the injury, thereby robbing minors of the protection of the statutory tolling of minors' claims. *See* 42 Pa.C.S. § 5533(b); *Nicole B. v. Sch. Dist. of Philadelphia*, 237 A.3d 986, 993 (Pa. 2020). We also acknowledge appellees' arguments assailing the Agreement's release provisions and their position that if the arbitration provision is deemed enforceable against minors, then so too would the release provisions and the shortening of the limitations period. *See* Santiagos' Brief at 21-22; Shultzes' Brief at 16-17. We also note Sky Zone's position that a finding of enforceability as to the (continued…)

Parents, as natural guardians, do not have an inherent authority to "intermeddle" with the property of their minor children, which includes legal causes of action. *Brill*, 127 A. 843. "Intermeddling" undoubtedly includes forfeiting the right to have claims adjudicated in a court of law where the prosecution of a minor's claim is subject to the oversight and control of the court to insure pursuit of the minor's best interests. For these reasons, we find that parents are without authority to bind a minor child to an agreement to arbitrate.

The orders of the Superior Court are affirmed.

Chief Justice Todd and Justices Wecht, Mundy and McCaffery join the opinion.

Justice Brobson files a concurring and dissenting opinion in which Justice Dougherty joins.

---

arbitration provision does not make the enforceability of the Agreement's remaining provisions a foregone conclusion, and that if minors are required to submit their claims to arbitration, "[s]uch a finding will not require [minors] to release" claims against Sky Zone. Sky Zone's Brief, 25 EAP 2023, at 24-25.

Our conclusion that parents cannot bind their minor children to an agreement to arbitrate their claims obviates the need to address the other terms of the arbitration provision, including the purported shortening of the limitations period contained in the arbitration provision here. As for the parties' arguments regarding the Agreement's release provisions, the issue that this Court accepted for review concerns the enforceability of the arbitration provision only, *see Santiago v. Philly Trampoline Park, LLC*, 304 A.3d 330 (Pa. 2023) (per curiam); *Shultz v. Sky Zone*, 304 A.3d 331 (Pa. 2023) (per curiam). While the policies and procedures protecting minors because of their legal disability may foreshadow the disposition of those arguments, they are outside of the scope of this appeal.